ALBANY,
August, 1811.

In the matter of
the M'DOWLES.

*Williams* observed, that neither of the pleas required a counsel's hand, and cited *Tidd's Practice*, 622. 1 *Sellon*, 326.

---

In the matter of HUGH M'DOWLE and JOHN M'DOWLE, Infants.

An infant cannot be bound an *apprentice,* unless he is a party to, and executes the deed or indenture. Where the father of an infant and the master executed an indenture, binding the infant to the master, it was held that the indenture (though the father was bound) was not binding on the child; and that the infant alone could take advantage of any defect in the indenture.

WRITS of *habeas corpus* were awarded, in the last vacation, by the recorder of *Albany*, to *Nathan Spier*, of the town of *Watervliet*, to bring up the body of *Hugh M'Dowle*, and to *Nathan Slosson*, of the same place, to bring up the body of *John M'Dowle*. The recorder certified the writs and returns into this court, and recognised the parties to appear at this term, and produce the infants. They now appeared, and the infants were produced in court.

The return by *Nathan Spier* stated, that on the 3d of *May*, 1808, *Matthew M'Dowle*, father of the infant, sealed and delivered to him an indenture, which was set forth. And the infant being brought up on *habeas corpus*, the court refused to order the infant to be delivered to the father, there being no evidence of improper restraint on the part of the master, but gave the infant leave to go where he pleased.

forth, by which he bound his son *Hugh*, then six years ALBANY, August, 1811.
of age, to *Nathan Spier*, (a member of the society called
*Shakers*,) to be by him, or under his care, fed, clothed,    Matter of M'Dowles.
taught to read and write, and in the carpenter's and
joiner's trade, provided circumstances would ad-
mit, and the boy inclined, and to instruct him in other
matters according to his faith, and the faith and practice
of the church and society to which he belonged, until the
age of 21. If the boy inclined to depart before, the fa-
ther agreed to take him away, on being duly notified,
&c.

The indentures were executed by *Spier*, and the father
of the infant. The return further stated, that the infant
had never manifested any desire to depart, but an incli-
nation to stay, though on the 20th of *December* last, the
father and *James M'Dowle* had fraudulently and forcibly
taken away the boy and kept him six weeks; that he,
*Spier*, had performed the covenants in the indenture on
his part, and was willing to perform, &c.

The return to the other writ was similar; it stated that
*John* was bound by his father on the 23d of *April*, 1808,
the infant being then 8 years old, and that he was to be
taught the trade of a blacksmith, &c.

A petition was also presented, signed by the infants,
one being 11, and the other 8 years old, praying that
they might now be permitted to execute the indentures.

*Rodman*, for the infants, contended that the indentures
were void. The act concerning *apprentices* and *servants*
(sess. 24. c. 11. s. 8.) requires the infant to be a party to
the deed; he must be bound by indenture of his or her
own free will; and the infant cannot be bound unless he ex-   * 1 *Black. Com.*
ecutes the indenture. An infant cannot be bound an ap-   426.   1 *Salk.*
68.   1 *Burn's*
prentice without deed, and that must be, according to   *Just.* 88. (20th
edit.) Ld.*Raym.*
the statute, by indenture.*   1117.

ALBANY,
August, 1811.

Matter of
M'DOWLES.

* 8 East, 25.
S. P.    2 Salk.
479.    1 Bott.
522.
† Dalton, 58.

In the case of *The King* v. *Cromford*,* Lord *Ellenbo-rough* said, that a contract between the father and the master, under seal, not executed by the infant, not being a legal apprenticeship, was not binding on the son or father for him, but the service was voluntary.

Again, the word *apprentice* must be used in the indenture, otherwise it is void.†

‡ 4 Comyns' Dig.
579. Just.(B.55.)

§ 2 Term Rep.
726.

¶ 8 Term Rep.
379. 1 East, 531.
4 East, 298.

** 5 Johns. Rep.
261, 162. 1 Hen.
Bl. 515.    Doug.
500.    5 Term
Rep. 715.

*P. Van Vechten* and *A. Van Vechten*, contra. This is an application on the part of the father, who has voluntarily parted with all his authority over his child. It is not necessary to show that the indenture was within the statute. It is sufficient, if it is good at the common law; for a father has a right, by common law, to bind his child.‡  But the statute cannot require the infant to sign and seal the indenture, for he may be so young as not to be able to sign it. All that can be required is, that the infant should consent to the binding, and that consent may be by parol.§

It has been laid down in several cases, that it is not necessary that the word *apprentice* should be used in the indenture.¶

The father here has no claim or right to the child, after having voluntarily parted with his power and authority. The object of the writ of *habeas corpus* is to remove illegal or improper restraint. It is granted at the instance of the party aggrieved. Infancy is a personal privilege, and can be taken advantage of only by the infant himself.**  Besides, the contract itself provides an adequate remedy for the infant, for he may leave his master whenever he pleases. There is no evidence of any coercion used by the master, to keep the infant, against his inclination.

*Per Curiam.* Two objections are taken to the validity of the indenture stated in the return; 1. That it is not executed by the infant; 2. That the word " apprentice" is not inserted in the deed.

The first objection is founded on the words of the sta-
tute, (*Laws*, vol. 1. p. 186.) which evidently requires the
deed to be executed by the infant, as well as by his pa-
rent or guardian. At common law, a parent may bind
his infant an apprentice, but the statute must be consi-
dered as controlling the common law, in this respect, and
as requiring the infant to be a party to the deed. The
infant, in the present case, is not therefore bound, and
the question is as to the relief which ought to be granted
upon the present writ.

The father who, on his part, executed the indenture
with the master, sues out the writ. There is nothing
before the court to show any improper treatment of the
infant, nor that the party to whom the father intended to
bind him has not hitherto faithfully performed the sti-
pulations in the indenture. This is not a case then in
which the father has any equity, or any right to com-
plain. He may be bound still by the covenants in the
indenture, though the infant is not. It is for the infant
alone to take advantage of the defect, and if he does not
choose to do it, he may waive the defect, and avail him-
self of the benefit of the apprenticeship. All that the
court are required to do, under the present writ, is to see
that the infant is not restrained against his will. The course
and practice of the *English* courts, on the like occasions, is
well settled. It was observed by Lord *Mansfield*, in the
case of *Rex* v. *Delaval and others*, (3 *Burr.* 1434.) that,
" in cases of writs of *habeas corpus* directed to private
persons to bring up infants, the court is bound, *ex debito
justiciæ*, to set the infants free from any improper re-
straint; but they are not bound to deliver them over to
any body, nor to give them any privilege. This must be
left to their *discretion*, according to the circumstances of
the particular case." And in that case, the *K. B.* refu-
sed to deliver the infant to her father, but left her at li-
berty to go where she would. In the case of *Rex* v.
*Smith*, (2 *Str.* 982.) a boy under 14 was brought up on

*habeas corpus*, sued out by his father, to obtain possession of him from his aunt; but the court merely left the boy a liberty to go where he pleased, and the boy chose to stay with his aunt.

In the present case, then, the court can only declare, that the infants are at liberty to go where they please. They may go and put themselves under the protection and care of their father, or they may return to the service of their master.

*N. B.* The *Chief Justice* then asked the infants where they chose to go, and they answered that they wished to return to their masters. The counsel for the masters suggesting that violence might be used on the part of the father, to gain possession of the boys, the court directed a constable to attend them. Afterwards, the counsel for the father suggested to the court, that improper means and constraint had been used by the masters and others, belonging to the society of *Shakers*, to induce the children to declare their election to return, and that the answers were not freely given by them to the court. The parties then agreed that the boys should be privately examined by three gentlemen of the bar as to their election; and the court appointed three counsellors to examine the boys, in order to discover their free wishes. The counsellors, after making the inquiry, reported to the court, that the boys, after being carefully informed of the purpose of the inquiry, expressed a decided and unequivocal desire to return to their masters, and a strong and unaccountable repugnance to go back to their father. The court thereupon ordered the boys to be delivered to their masters, and directed an officer to attend and protect them in their return, according to their choice.

It was mentioned, that the mother of the children, now deceased, had been a member of the society called *Shakers.*