Tueley, J.
delivered the opinion of the court.
Among the multiplied duties of a court, there are none the discharge of which is attended with more pain and regret than those which interfere with the domestic relations of husband and wife, parent and child. These relations are of so sacred a character, and involve to so great an extent the peace and happiness of mankind in general, that it cannot be otherwise than a source of deep mortification to a well-regulated and humane mind to be compelled publicly to investigate and determine conflicting rights arising out of feuds existing between them.
This difficulty is not lessened, but increased, by the difference of the sources from whence our law is derived; on the one hand, the common law, with its stern and iron-bound principles based upon the manners, customs and thoughts of our ancestors a rude and undigested people of rough energy and indomitable pride, addicted to arms and considering battle and conquest as the only great and glorious duties of life, making all their institutions civil and domestic subservient to these ends, giving a paramount right to the superior over the services, liberty and even life of the inferior, embracing in this view the relations of landlord and tenant, husband and wife, parent and child, guardian and ward; and fixing their duties and rights, without regard to justice or humanity, upon the principles of concentrated power upon which the feudal system rested; on the other hand, the jurisprudence of a refined race, one that had emerged from its barbarism, and after having-subdued the world, had been for centuries polished by philosophy, poetry, eloquence and art, even to enervation.
By the one, women, and children of immature years, held as they always have been by uncivilized people as the property of the husband and father, having no will of their own, no rights in contradiction to his power and authority, and only considered through him as a portion of the community in which they lived. By the other, with more regard to the harmony of nature, looked upon as beings created not only by the same *534 power, but, with exceptions resulting frorn the subordinate position in which the laws of nature place them, as having equal rights to all the enjoyments of life, and as safe and adequate protection for them, as the husband and father.
These variant principles have for a length of time been antagonist to each other in England, and to a great extent in this country — the common law courts giving protection to the one, and the courts of chancery to the other. It would be desirable to have these relations placed upon a wise and humane basis by positive enactment, and not leave them as they are at present to a considerable extent, in nubibus.
In the case before the court, we are' only called upon to expound what is the common law relation between the father, the wife and the child, and to enforce the rights as thus recognized. Unfortunately for all the parties to this controversy, the husband and wife have not found it to their happiness to comply with their mutual promise so solemnly made to each other, to live together until God should part them. There seems to be no want of integrity on the part of either — he is proved to be peevish and fretful, and she is no doubt high-spirited and respectful. But we will not undertake to determine upon whom the greater blame rests. Be this as it may, the wife has left the husband and taken his children with her, and he is now asking the aid of this court to restore them to his possession. And the only question for us to determine, is whether the relief thus sought can be given.
That the father is entitled upon the principles of the common law to the exclusive custody of his children is not and cannot be controverted; and that if he have it, a court of common law will not deprive him of it but for an abuse of his trust affecting their persons either by improper violence, or improper restraint, and which would justify the issuance of a writ of habeas corpus for their protection. Shelford in Marriage and Divorce, 409, 410, and the authorities there cited. But in this case he has lost their possession, and the question as here presented is under a different phasis. The probability is, that the rigid principles of the common law would have restored the possession of a minor child to the father under all the circumstances; for, *535 as has been observed, this would have been in conformity with the social principle. But if it ever were so, it is so no longer, and perhaps the mitigation so far as it has extended is adopted from the civilians. The mitigation of the principle is, “that the coart is not bound in a proceeding upon habeas corpus, to deliver the child to the father, but may act upon its discretion according to the circumstances of the particular case.” The first, and so far as we at present know, the earliest case referred to in support of this position, is the case of The King vs. Delaval and others, decided by Lord Mansfield, in 3 Burrow, 1434. The predilections of that jurist for the civil code and his strong disposition to engraft its principles upon the rude stem of the common law, are well known. However, the principle thus laid down has been so repeatedly recognized both in England and the United States, that it is now at all events a part of the common law. Shelford on Marriage and Divorce, 410; 8 Johns. Rep. 328; 13 do. 418; 5 Binney, 520; R. M. Charlton’s Rep. 489; 6 Greenleaf, 463; 3 Mason, 382; and the celebrated case of D’Hauteville, where all the authorities are well examined. The principle being thus established, that the court is not bound by a fixed principle of right to restore a child to its father, but may at its discretion withhold it, the question occurs, Under what circumstances may that discretion be exercised? This must of necessity in many instances be a thing difficult for judicial determination, as no fixed and determinate principles can be established upon the subject — every case resting upon its own peculiar circumstances. It is to be observed, that in all cases the interest and welfare of the child is the great leading object to be attained, and therefore if it be of an age sufficiently matured to judge for itself, the court will free itself from the responsibility of determining the controversy, by leaving it at liberty to go where it pleases. Rex vs. Smith, 2 Strange, 982; 8 John. 328. But if it be not of such an age, the court will judge for it. There, are certain principles upon the subject recognized by all the authorities, and controverted by none; such as, if the father be vmworthy, or incapable morally or physically, to take care of the child, if there be apprehensions of improper restraint, the court will not restore the possession to him.
*536 In the case of D'Hautevillc it was held, that if the health and age of the child were such as to make the vigilance and attention of the mother necessary for its care, it would not be taken from her and given to the father. In the case of The Commonwealth vs. Addicks and wife, 5 Binney, 520, Chief Justice Tilgh-man says, it is the interest of the children to which the anxiety of the court is directed, and he refused in that case to take them from the mother, on the ground of their tender age, one of the children being ten, and the other seven years of age. They were both daughters.
We deem it useless to enter into an investigation of the particular circumstances upon which the different cases rest, with a view to reconcile them. They completely establish the principle, that the court has a discretion upon the subject, and a conflict of judgment is under such circumstances tobe expected. But the principle, that it is the interest of the child which is to be looked to, without regard to the right of others, being established, relieves us to a great extent from the difficulty resulting frem a want of certainty in the exercise of the right of discretion. We will not, as we ought not, attempt to establish any general rule upon the subject, but confine ourselves to the inquiry as to the rights of those interested in the case under consideration. The wife, by the common law, has no right to the children against the husband. Therefore she cannot be looked to in this case except so far as she may be considered by the court the most suitable person under the circumstances to have their control, for their benefit. The father is not shown to be disqualified either morally or physically for their care and culture; and the only question left for consideration is, in whose possession will the interest of the children be best provided for, — the father’s or the mother’s. There are three, the oldest a boy aged near eight years, the second a girl aged near six years, the third a boy aged near four years. We think, exercising our discretion from the best lights that our knowledge of society gives us, that the oldest boy can be better raised by the father than the mother under the existing circumstances, but that the other two are of too tender an age to be removed at present from the fostering care of the mother, who is proved *537 to be worthy and well qualified for their protection. We therefore direct, that the eldest son be restored to the father, and that the daughter and youngest son remain with the mother until upon a change of circumstances it may be otherwise directed. We do this the more readily because the subject is now before the Chancellor, who has more power over it than we have by this proceeding.