Fowler *v.* Hollenbeck.

———————•◦•———————

Same Term.   *Before the same Justices.*

Fowler *vs.* Hollenbeck and Pillow.

Indentures of apprenticeship are not rendered invalid by omitting to specify the profession, trade, or employment in which the apprentice is to be instructed.

It is sufficient if the minor covenants to be under the care and in the employment of the master, and the master covenants that, in addition to supporting, clothing and educating the minor, he will teach him, or cause him to be taught, such manual occupation or branch of business as shall be found best adapted, or most suitable to his genius and capacity.

Fowler *v.* Hollenbeck.

Indentures of apprenticeship which are not conformable to statute are voidable only by the apprentice, and can not be avoided by any other person or party.

Where a father is a party to indentures of apprenticeship, and conveys to the master his right to the custody and services of the apprentice, and covenants not to take or entice him away, such covenant is obligatory upon him, both at common law and by statute, and he can not be protected in violating it.

It is no objection to indentures that the binding is to the master as trustee of a religious society or sect. The additional words are merely *descriptio personæ;* and it will be held a binding to the master individually and personally.

THIS was an action for trespass on the case for taking out of the possession of the plaintiff three boys, viz.: William H. Pillow, jun., Edward B. Pillow, and John D. Pillow, whom the plaintiff claimed under indentures of apprenticeship. The cause was tried at the Columbia circuit, in December, 1848, before Justice Harris. The indentures of William H. Pillow, jun. were made between Edward Fowler, trustee of the United Society, called Shakers, of New-Lebanon, in the county of Columbia, and state of New-York, of the first part, and William H. Pillow late of the city of New-York, of the second part, and William H. Pillow jun., a minor, son of the said William H. Pillow, and were signed and sealed by all three persons last named. The indentures of the other two boys were similarly executed.

The defendants separately pleaded the general issue, and the defendant William H. Pillow gave notice that on the trial he would prove and give in evidence, in bar of the plaintiff's right of action, that the plaintiff never was possessed of the custody, or entitled to the services of the said William H. Pillow, jun. John D. Pillow and Edward B. Pillow, as his lawfully indentured apprentices, and if any indentures were executed to, or held by the plaintiff, the same were illegal and void. That if any such indentures were executed to the plaintiff, they were executed to him as trustee of the Society of Shakers, of New-Lebanon, and for their use and benefit, and that the plaintiff had no personal or individual right to, or interest in the custody or services of such apprentices, under said indentures. That the said plaintiff never had, or claimed to have the care, custody or pos-

session of the said children, under or by virtue of the said inden-
ture, and therefore forfeited all right to the same. That the
said indentures, if any were executed to the plaintiff, were illegal
and void, as not containing any profession, trade, or employment
in which the said supposed apprentices were to be instructed or
taught. That they were illegal and void, as binding the sup-
posed apprentices to be governed by the principles and practices
of the Shaker Society, and which are immoral, irreligious, and
against the well-being and security of society, and the civil insti-
tutions of our government; and that the said supposed inden-
tures were also void for want of mutuality. The defendant gave
notice that he would further prove that the said William, Ed-
ward, and John Pillow, before the supposed grievances in the
plaintiff's declaration mentioned, by virtue of a writ *de homine
replegiando,* issued out of the supreme court, tested on the 16th
of December, 1847, and returnable on the first Monday of Janu-
ary, 1848, directed and delivered to the sheriff of the county of
Columbia, were duly committed by the said sheriff to the safe
keeping and possession of the defendant Pillow, upon sufficient
bail taken by the sheriff; and while the said children were so in
the custody of the sheriff, by virtue of the said writ, on the 5th
day of January, 1848, upon the petition and application of the
said plaintiff, they were, by virtue of the people's writ of habeas
corpus, issued out of the superior court, taken out of the custody
of the sheriff and of the defendant, who then still had the
care and possession of them, for and on behalf of the said sheriff,
and brought before the Hon. Lewis H. Sandford, one of the jus-
tices of that court. And such proceedings were thereupon had,
that by the consideration and judgment of the said court, the
said William H. Pillow, jun. was permitted to go at large and to
depart with the plaintiff, and the said Edward and John Pillow
were ordered and directed to remain in the custody of the de-
fendant.

The defendant, Hollenbeck, was the sheriff who served the
writ *de homine replegiando.*

On the trial the plaintiff proved the carrying away of the
children by the defendants from the Shaker village at New-Leb-

Fowler *v.* Hollenbeck.

anon; that the children had lived with the plaintiff for about a year, when they were taken away.  On his cross-examination, the witness testified that Fowler had no wife, and did not keep house by himself; that he had the charge of the children, and saw that they were educated and dealt with according to the rules of the Society—and that the children were under his authority and control, and not under the control of the Shaker Society.  That Fowler was a trustee of the society.  The plaintiff proved the execution of the indentures, and offered to read the same in evidence.  This was objected to by the defendants' counsel, and the evidence rejected by the court, and the plaintiff excepted to the decision.  The judge then decided that, so far as the plaintiff claimed to be entitled to the possession and services of the said three children, under the indentures, as the master of said children, the action could not be sustained, and he should direct the plaintiff to be nonsuited.  To which decision the plaintiff's counsel excepted.  The plaintiff then offered to prove that at the time the children were taken away by the defendants, the plaintiff claimed to hold them under the said indentures as his lawfully indented servants or apprentices; which offer was objected to by the defendants' counsel, and rejected by the court. He also offered to prove the value of the children's services, and the expenses he had been put to and had incurred in retaking and endeavoring to retake and regain possession and custody of the said children; both which offers were objected to, and rejected by the court, and the plaintiff's counsel excepted.

The court then directed a judgment of nonsuit to be entered, and the plaintiff excepted; and upon a bill of exceptions moved for a new trial.

*C. L. Moncll*, for the plaintiff.

*K. Miller*, for the defendants.

*By the Court*, PARKER, J.  The most important question to be decided in this case is, whether the indentures of apprenticeship executed between the plaintiff of the first part, and the de-

*Fowler v. Hollenbeck.*

fendant Pillow, of the second part, and each of his sons, of the third part, are valid.

It is objected that the indentures are void because they do not specify the profession, trade, or employment in which the apprentices were to be instructed. The statute (2 *R. S.* 215, 3*d ed.* § 1,) authorizes an infant, with the consent of certain persons, or officers, mentioned in the statute, " to bind himself, or herself, in writing, to serve as clerk, apprentice, or servant, in any profession, trade or employment." In this case the minor bound himself " to be under the care and in the employment of the party of the first part," and the plaintiff covenanted that, in addition to supporting, clothing and educating the minor, he would teach him or cause him to be taught such manual occupation, or branch of business as should be found best adapted, or most suitable to his genius and capacity, &c. There is nothing in the statute requiring that the profession, trade or employment shall be specified in the indentures; and I cannot think that such specification is necessary to their validity. On this point we are not without authority. The case of *Bowes* v. *Tibbits*, (7 *Greenl. R.* 457,) was decided under a statute that authorized the overseers of the poor " to bind out by deed, as apprentices, to be instructed and employed in any lawful art, trade or mystery, or as servants, to be employed in any lawful work or labor," &c. The indenture bound the boy to do any work in which his master might see fit to employ him. It was contended that the employment ought to be specified, that the court might see whether it was a lawful employment. But the court held such specification unnecessary, and that the expression used meant lawful work; and the indenture was adjudged valid, within the statute. In accordance with that decision, the indentures now before us were held sufficient by Mr. Justice Sandford of the New-York superior court, when the same objection was raised before him. (*People ex rel. Pillow* v. *Fowler*, 6 *N. Y. Legal Obs.* 196. 1 *Sandf. S. C. R.* 602.)

The statute prescribes certain requisites as to the form and contents of the indentures, (2 *R. S.* 215, 216, §§ 2, 8, 9, 3*d ed.,*) and the 26th section declares that no indenture shall be valid,

unless made in the manner before prescribed. If it had been intended that an indenture should be void, because the particular employment was not specified, the statute would have required such specification. It is evident the statute does not intend to restrict the executing of indentures to a particular trade or profession. On the contrary, it authorized the binding as " a servant" in "any employment." It may be that of a teamster, a laborer, or a fisherman, or any other business that can be learned with little or no instruction. The statute does not require a covenant that the master shall instruct the apprentice in some trade or profession; but in this case the master did covenant to instruct the minor in such manual occupation as should be found best adapted or most suited to his genius or capacity. I think the indentures were valid.

But there is another conclusive answer to the defense interposed at the trial. Pillow, the father of the apprentices, was a party to the deeds. He had conveyed to the plaintiff his right to the custody and services of the apprentices, and had covenanted not to take or entice them away. Independent of the statute, such a covenant was obligatory on the father, at common law; and he can not be protected in violating it. (*Matter of McDowle*, 8 *John.* 328. *Reeve's Dom. Rel.* 315, No. 2, 341, 342. *Ex parte Davis*, 5 *T. R.* 715. *Commonwealth* v. *Conro*, 2 *Barr's R.* 402. *Day* v. *Everett*, 7 *Mass. R.* 145. *Butler* v. *Hubbard*, 5 *Pick.* 250. *Nickerson* v. *Howard*, 19 *John.* 113.) The statute also expressly authorizes every father to dispose by deed, of the custody of his child, during his minority, or for a less time. (2 *R. S.* 209, § 1, 3d *ed.*)

Indentures of apprenticeship which are not conformable to statute are voidable only by the apprentice, and can not be avoided by any other person or party. (2 *R. S.* 218, § 26, 3d *ed. Matter of McDowle*, 8 *John.* 328.)

It is no objection that the binding was to the plaintiff, trustee, &c. The additional words are merely *descriptio personæ*. (*Hills* v. *Bannister*, 8 *Cowen*, 31.) The plaintiff would be personally liable on his covenants in the indentures if he should

fail to fulfill on his part; and he alone has a right to complain of a violation on the part of the other parties to the instrument.

It is unnecessary to examine the other questions raised on the trial.

I think there should be a new trial; costs to abide the event.

