# SUPREME COURT.

## The People, *ex rel.* Sarah Ann Barbour agt. Benjamin Gates.

The Revised Statutes (2 *R. S.*, 154, § 1,) provide for the *binding of infants* to serve as apprentices or servants, with the consent of the persons or officers named in section second. The latter section provides that such consent shall be given : 1st. "By the father of the infant. If he be dead, or be not in a legal capacity to give his consent, or if he shall have abandoned and neglected to provide for his family, and such fact shall be certified by a justice of the peace of the town and indorsed on the indenture, then, 2d. By the mother."

Where it appeared that the father was dead, and the consent of the mother was obtained to the indenture of her minor daughter, but the certificate of the justice was *not indorsed on the indenture itself*, but on a separate paper annexed, and was not made by a *justice of the peace of the town* where the parties resided, but of an adjoining town :

*Held*, that the statute had not been complied with, and that the indenture had no binding efficacy as against the minor.

But the *mother* cannot take advantage of the defect in the execution of the indenture. She has consented to the binding of the child and covenanted by the indenture that she will not entice, or cause the minor to be enticed, from the services and government of the party to whom she is bound, during the continuancs of the indenture ; therefore, she is *estopped* from asserting any right by *habeas-corpus*, or otherwise, to take away the minor from the custody of him to whom she has confided it.

The minor, in such case, is under no obligation to remain under the custody and control of the party to whom she was bound, nor has he a right to detain her against her will. She then being without a protector, the duty devolves upon the court, in the exercise of its equitable powers, to determine what disposition should be made of her custody.

In this case the minor daughter, nine years of age, was confided to the custody and and care of her *mother*, who not only being abundantly competent to take care and provide for her, but with all the affection and solicitude of a mother for her offspring, is better adapted to the discharge of the duties of training her up properly than any strangers, however kind and careful they might be in providing for her.

*Columbia Special Term, September,* 1869.

This is a proceeding upon *habeas corpus*, instituted by the relator to obtain possession and custody of her infant

daughter, Maria D. Barbour, who is now nine years of age and upwards. On the 9th of May, 1866, the respondent, Benjamin Gates, and the infant entered into indentures binding the infant to said Gates, until she attained the age of eighteen years. Gates covenanted, among other things, to teach or to cause said infant to be taught, the art and mystery of a seamstress, or such other occupation as was best suited to her capacity. Appended to the indenture was a certificate executed by the relator, consenting to the conditions of the indenture, on the behalf of the minor. The instrument in question was attached to another indenture of the same character, executed by the relator and Gates and another minor child of the relator, and bearing date the same day.

Upon the back of the said last-mentioned indenture was a certificate, dated on the 9th of May, 1866, signed John M. Barnes, justice of the peace, to the effect that from evidence this day produced before him, that he was satisfied that the father of the infants within-named was dead. It appears that Barnes was not a justice of the peace of the town of New Lebanon, where Gates resided and where the indenture was executed, but of the town of Canaan. No stamp was attached to the indenture at the time of its execution, but on the 9th of May, 1869, a stamp was attached to the certificate of the relator annexed to the indenture of her daughter, which was canceled by Benjamin Gates as of the last-mentioned date. Also another five cent stamp, which was not canceled at the same time, was attached at the top of the instrument in question.

J. C. NEWKIRK, *for relator.*

R. E. ANDREWS, *for respondent.*

MILLER, J.—The most important question which arises upon this application is whether the indenture in question was executed in accordance with the provisions of the Revised Statutes so as to make it binding and valid.

The Statute (2 *R. S.*, 154, *Sec.* 1,) provides for the bind-
ing of infants to serve as apprentices or servants with the
consent of the persons or officers named in section second.
The latter section provides that such consent shall be given:
1st, " By the father of the infant. If he be dead, or be not
in a legal capacity to give his consent, or if he shall have
abandoned and neglected to provide for his family, and such
fact shall be certified by a justice of the peace of the town
and indorsed on the indenture, then 2d, By the mother.

It is insisted that the statute was not complied with,
inasmuch as the certificate was not indorsed on the inden-
ture itself, and was not made by a justice of the peace
of the town of New Lebanon, where the indenture was
executed.

I think that the objection is well taken. The statute in
question which provides for the making of an indenture
which is obligatory upon an infant, who cannot at common
law ordinarily make any valid contract, must be considered
as establishing a system by which they can lawfully bind
themselves and must, therefore, be substantially complied
with. It is not merely directory, but is peremptory and
absolute in its requirements. The father must consent while
living, unless he has not a legal capacity to give his consent,
or if he has abandoned and neglected to provide for his
family, but if dead or thus incapacitated, then the mother
must consent upon a certificate of a justice of the town.
The statute was not intended, as is contended, to require a
certificate only in case of abandonment. Such a construction
would be very narrow, and there is no satisfactory reason
for thus limiting its provisions.

Its manifest intention is that when either of the facts
named occurs; and " such fact" is certified as required, that
then the mother may consent. One of the cases enumerated
is sufficient to authorize the consent of the mother, and
when either of them happens, a certificate must be obtained
as to that fact and nothing more.

The prior right being in the father, the statute was designed to require proof that he had no such authority before the mother was permitted to exercise it, and to guard against fraud or imposition, the proof was to be made before a justice residing in the town where the indenture was executed.

. It was also intended for the purpose of protecting the rights of all the parties, that the certificate of the justice should be indorsed on the indenture itself. This being required explicitly and positively, I am at a loss to see how the omission could be obviated. The indorsement upon another instrument does not conform either to the terms or the spirit of the statute and is not sufficient compliance with its provisions. It is plain to my mind that the statute has not been complied with and that the indenture therefore has no binding efficacy as against the minor.

A subsequent provision, under which the indenture in question was executed, of the same title (2d R. S. 158, Art. III. § 26,) declares that "no indenture or contract for the service of any apprentice shall be valid as *against the person whose services may be claimed* unless, made in the manner before prescribed in this title."

The person whose services are claimed here is the infant and so far as she is concerned there is no obligation on her part to fulfill the indenture. The question then arises, whether the mother can take advantage of the defect? This question is not free from difficulty. She has consented to the binding of the child, and covenanted by the indenture, that she will not entice, or cause the minor to be enticed, from the services and government of the respondent during the continuance of the indenture, and is she not thereby estopped from asserting any right to take away the minor from the custody of him to whom she has thus voluntarily confided it? It was her own free act and unless the contract is void as to her, she cannot repudiate it. In the matter of *McDowles*, (8 *Johns. R.*, 331,) which arose on *habeas corpus*, the indenture was not executed by the

infant according to the requirements of the statute, and it was held, that the indenture, though the father was bound, was not binding on the infant and that the infant alone could take advantage of any defect in the indenture, and if he did not choose to do so he might waive the defect and avail himself of the benefit of the apprenticeship.

In *Fowler* agt. *Hollenbeck*, (9 *Barb.*, 309,) which was an action of trespass on the case, for taking out of the possession of the plaintiff, three infant children who were bound under indentures of apprenticeship, the indentures were held to be valid, and in discussing the question it was said by PARKER, J., that "he (the father of the apprentices, who was a party to the deed) had conveyed to the plaintiff his right to the custody and services of the apprentices, and had covenanted not to take or entice them away.

"Independent of the statute such a covenant was obligatory upon the father at common law and he cannot be protected in violating it."

It was also held in this case that the statute (2 *R. S.*, 209, § 1, 3*d Ed.*,) expressly authorizes the father to dispose of by deed, of the custody of his child during his minority, or for a less time. The question now discussed did not distinctly arise in this case, but the principle decided is one which seems to be upheld by numerous authorities. The relator, then, having parted with her right to the child by the indenture in question, cannot assert a right to her custody.

The minor is under no obligation to remain where she is, nor has the respondent any right to detain her in custody against her will. She is, then, without a lawful protector; and the duty devolves upon this court, in the exercise of its equitable powers, to determine what disposition should be made of her custody.

In the performance of this responsible duty the interest of the child should be the controlling question, and whenever this is ascertained, judgment should be pronounced irrespec

tive of all other considerations. (*The People* agt. *Wilcox*, 22 *Barb.*, 178; 14 *N. Y.*, 575 ; *The People* agt. *Cooper*, 8 *How.*, 288 ; *The People* agt. *Erbert*, 17 *Abb.*, 395, *and cases in notes, and particularly the case of McKain reported at page* 399). The authorities also hold that "this power is for the benefit of the child and is not to be defeated by one having a mere legal title to the custody of the child." (*See* 17 *Abb.*, 400).

· It is apparent in this case that the relator is abundantly competent to take care of and to provide for the minor, and in such a case there would seem to be no question · that a mother with all the affection that she must feel for her offspring would be better adapted to the discharge of the duties of training her up properly than any strangers, however kind and careful they might be in providing for her. I entertain no doubt but that the child has been well taken care of by the person having her in charge, and I feel bound to say that I do not think the evidence in this case establishes that there are any matters connected with the society to which the respondent is attached, which renders it improper for her to remain there.

With their religious faith this court has nothing to do. The constitution guarantees to ever citizen liberty of conscience, and certainly the relator has no ground to complain on this score, when she has herself embraced the doctrines maintained by the society, became herself a member and voluntarily parted with the custody and control of her infant children. But notwithstanding such is the case there can be no question as between the respondent and the relator, that the interest of the child will be most substantially promoted and advanced by placing her under her mother's charge.

It is too clear to admit of an argument that a mother who is the guardian of infant children by nature and nurture as well as by law, where the father is dead, is better calculated than any other person to train and protect them during in-

fancy, both in sickness and health and to prepare them for future usefulness.

There are cases reported where the court, in the exercise of its authority, has left it to the infant to decide where he or she is willing to go. And I assume for the purposes of this case that this child would naturally cling to those with whom of late years she has been associated and from whom she has experienced many acts of kindness and affection. Separated from her mother, as she has been, for a number of years, it is by no means remarkable that she should not realize any other mother than those who have watched over her, and who have performed, to some extent, at least, that important office. As was well said by a distinguished judge: "It seems to be but a mockery to ask a child of nine years of age whether it should remain with a person who brought it up, or go with a stranger."

The feeling of attachment to those with whom she has most recently been intimately connected must, however, in time yield to that affection, regard and love which none but a mother can feel and manifest towards her offspring.

In *People* agt. *Wilcox*, (22 *Barb.*, 178, and 14 *N. Y.*,) the court held, that the father being dead, the mother was the proper person to be intrusted with the nurture, care, and custody of an infant child, eight years of age. The child in this case had been brought up from earliest infancy by the grandparents, and the grandfather had been duly appointed its guardian and was abundantly able to provide for it. The child expressed a strong preference for the grandparents, and considered her mother from whom she had long been separated, as a stranger. The court held the mother to be the proper custodian, and directed that she be delivered to her. The case is nearly parallel with the present one, except that, in the case cited, the grandfather had a clear legal title to the custody of the infant, and it had been taken when a few weeks old and placed under the care and charge of the grandparents.

The preferences of the child were entirely disregarded. Mr. Justice MASON, now one of the judges of the court of appeals, before whom the case last cited was heard, after a full discussion of the subject, and announcing his conclusion that the interest of the child would be best promoted by committing its custody to the mother, quotes from the opinion of the Chancellor, in *People* agt. *Mercein*, (8 *Paige*, 47,) as follows: "She, (the mother,) all other things being equal, is the most proper person to be intrusted with such a charge. The laws of nature have given her an attachment for her infant offspring which no relative will be likely to possess in an equal degree, and where no sufficient reason exists for depriving her of the care and nurture of her child it would not be a proper exercise of discretion in any court to violate the law of nature in this respect."

Whatever difficulties may exist with this child in changing her residence, I entertain no doubt, will yield to the solicitude and care of the relator, who has evinced so much anxiety to assume the responsibilities which must be incurred in promoting the future welfare and happiness of her only child.

I have not deemed it important to discuss the other questions presented, but with the views I entertain I consider it my duty to commit the custody of this child to the mother.

As it may be desirable to review the decision of this case by appeal to the general term, I am inclined to grant a stay of proceedings if an appeal be taken, upon terms to be fixed in the order to be entered herein, which may be settled upon notice.

This decision was affirmed at general term, at Albany, March, 1870, before HOGEBOOM, INGALLS and PECKHAM, Justices.