Greene, Recorder.
Judicial officers of cities, among- whom are recorders, are recognized in the amended 6th article of the constitution (§ 18, last clause ; 7 Edm., 815), also in the constitution of 1846 (art. 6, § 18), and in both, the mode of their election or appointment is provided for. In the constitution of 1822 (art. 5, § 6) they are recognized by name. The legislature, February 25, 1812 (§ 11), conferred upon the recorders of New York, Albany, and Hudson the powers of supreme court judges at chambers. The same powers were again conferred upon the recorder of Albany by section 10 of chapter 150 of the Laws of 1849, and again by section 10 of chapter 284 of the Laws of 1872. A like legislative grant of authority to the recorder of Troy (Laws of 1849, p. 165, § 4) was passed upon and sustained by the court of appeals in the case of Hayner v. James, 17 N. Y., 316.
This was under the constitution of 1846, and before the recent amendment of the 6th article ; but the authority of the legislature to alter and regulate the jurisdiction and proceedings in law and equity under which these judicial powers are given is substantially the same as before that amendment (Const. 1846, art. 6, § 5 ; art. 6, as amended, § 8, last clause).
*420 Possibly the jurisdiction expressly given by the constitution to the court there named, coulá not be taken away by.the legislature under this power to alter and regulate, but like jurisdiction could and has been repeatedly conferred upon tribunals and officers other than those upon which the constitution confers it, many of them newly created.*
By section 23, article 2, title 1, chap. 9, part 3 of the Bevised Statutes (2 R. S., 563), application for the writ of habeas corpus may be made during any term or vacation of the supreme court to any officer who may be authorized to perform the duties of a justice of the supreme court at chambers being or residing within the county where the prisoner is detained.
It is not disputed in this case that the recorder of this city possesses the power of a supreme court judge at chambers in matters of jurisdiction in law, but it is urged that this is a question of equity jurisdiction confided by the constitution exclusively to the supreme court, not to its judges at chambers, or if also confided to its judges at chambers, not to other judicial officers acting as, but not actually judges of the supreme court.
As to the jurisdiction of justices of the supreme court at chambers in matters of equity cognizance, the question was settled in favor of the jurisdiction, by the court of appeals, in the case of Wilcox v. Wilcox, 14 N. Y., 575. It was there held that they exercise, at chambers, the same powers in matters of equity cognizance that formerly the chancellor, who for many purposes carried his court with him, could rightfully exercise out of term, and in that case, which was not, however, on habeas corpus, the order of a judge at chambers taking a minor child from the custody of its guardian, appointed by the surrogate after the death of its father, and delivering it to the care and custody of its mother, was affirmed by the court.
*421 The jurisdiction of the chancellor out of term on habeas corpus was. unquestioned and frequently exercised ; and in the case of People v. Mercein, 8 Paige, 49, where he disposed, on grounds of equity, of the custody of an infant, he held it to be immaterial to inquire whether in allowing the writ he acted as a mere commissioner under the statute, or as a court proceeding by virtue of an inherent power derived from the common law, but regulated in the exercise of that by the special provisions of the Revised Statutes.
In the case of Hayner v. James, above cited, Comstock, J., in delivering the leading opinion of the court in support of the jurisdiction of the recorder of Troy to .appoint a receiver in a proceeding supplementary to execution, claims that the matter before that recorder, as a supreme court judge at chambers, was of equity cognizance, and that he had jurisdiction. The court sustained the j urisdiction, but without deciding whether it was of law or equity cognizance, and apparently with the idea that it was immaterial, and that in either case he had jurisdiction.
In the opinion cited, the learned judge expresses his inability to perceive in what respect jurisdiction in equity is confided to the supreme court more exclusively than jurisdiction at law, and refers to.the fact that both are given generally and in the same terms.
The proceeding by habeas corpus is emphatically a summary one, and its chief end and aim is to relieve from illegal restraint. It acts upon the present actual condition of the parties, and does not undertake to prescribe what their future relations shall be (Hurd on Habeas Corpus, 460).
Orders have sometimes been made, it is true, of a more mandatory and prospective character, but they do not appear to rest upon any satisfactory ground (Id. 460).
The court or judge in such cases does sometimes *422 exercise a degree of equity jurisdiction; but it is far short of the power exercised by a court" of equity sitting as the representative sovereign in the character of \parens patrice (Id. 456).
And the jurisdiction is precisely the same whether exercised by the court of chancery or by other officers or courts authorized to allow the writ (Id. 457, and cases there cited.)
It may be said to be a jurisdiction sui generis, not distinctively of law or equity, but embracing both to a limited extent, where they have been found essential to liberty, a jurisdiction as ancient as that of chancery itself and not more fluctuating in its boundaries. It has been exercised as a safeguard oh personal liberty ever since the days of Magna Otearía, and concurrently by judges and courts both at law and in equity.
Precedent and legislation have determined it, and as so determined, the constitution of the several States and of the United States and of Great Britain have from time to time sanctioned and maintained it, leaving its exercise to the judicial authorities accustomed to wield it, and to such as the legislative power might designate,
The limits of the jurisdiction that flows from the writ should be jealously guarded and observed, but within those limits it seems to me to be irrelevant to object either that they touch the domain of equity or law, or both. In this case even the qualified discretion in equity sometimes existing is not invoked.
Emelie Heilbronner, the unmarried mother of an illegitimate male child, now about six months old, and born in this city, complains that the respondent, Anthony Hoster, illegally holds and restrains it from her. Hosier returns that he holds it as his apprentice by a legal indenture. By the law of this State the mother is its natural guardian (Wright v. Wright, 2 Mass., 109 ; Robalina v. Armstrong, 15 Barb., 247 ; People v. Mitchell, 44 Id., 245.)
*423 I am to determine who is, and not who shall be the custodian of the child. No equity jurisdiction is invoked ; the fitness of either of the parties- to have the child is not made a question- on the proofs before me, as in the cases of People v. Kling, 6 Barb., 366 ; People v. Landt, 2 Johns., 375 ; Matter of Doyle, Clarke Ch., 154.
I am merely to find a fact and give it legal effect. If the child is not in illegal restraint I must dismiss the writ. If it is, I must discharge it from that restraint, and (Matter of Kottman, 2 Hill, 363), protect it in returning to its legal custodian.
With these views, rather indicated than discussed, I cannot doubt that I have jurisdiction of the case, and the objection is overruled.
The case is submitted on the pleadings alone.
The indenture is made by the overseer of the poor, who is authorized to apprentice an infant only when the child or its mother has become chargeable to the city (2 R. S., 155, § 6 ; Same Stat., 2 Edm., 163).
Was, then, this mother or child chargeable to the city at the time of the making of this indenture. Défendaut Hosier’s return shows that he had charge of the child for sometime next prior to and at the time when it was indentured to him, and that the mother paid him in full to that time for his care and support of it. The mother, it also appears by the return, was earning and receiving wages as a domestic servant.
The return, however, sets forth “that during several months last past she has asked for and received alms or pecuniary relief from the overseer of the poor,” that is, as I understand it, temporary relief—whether little or much, or how often, is not shown. It is not averred that she was receiving relief from or was a charge to the city in any form at the time of the making of this indenture. The mother and the defendant Hosier, the return proves, “ went to the office of the overseer of the *424 poor, and the mother then and there duly gave over the infant to defendant, with the consent of the overseer and two justices of the peace, and the indenture was executed in pursuance thereof.”
Evidently the necessity the statute contemplates,— i. e., that the city must provide for the child,—did not exist, nor had the duty to relieve the city from the burden of supporting it arisen.
The necessity that entitles the overseer to bind out a child must be real, not a mere form as in this case. The tender mercies of the alms house are not such as should be sought or exercised without real occasion.
Even if the mother had been receiving temporary relief at the time of making the indenture I think it would not make her chargeable to the city in the sense of the present statute. If it did, then however slight or temporary the relief, the overseer could apprentice all children of parents receiving it, and if work or better fortune come on the morrow, they would still find themselves bereft of their offspring and of the right to nurture and educate them in their tender years, and to receive from them affection and assistance. The- words of the statute clearly apply to a, pauper,—one who is a town charge, unable to support himself or his family, if he has one,—and to extend them to cases of merely temporary or casual relief, it seems to me is not within the spirit or purpose of the law. Such, substantially, Is the conclusion reached by Mr. Justice Harris, in People v. Hanna (3 How. Pr., 44).
The omission of the words “ or who "shall beg for alms” from the present statute, I think distinguishes the ease from that of Shermerhorn v. Hull (13 Johns., 270). That case is also different from this in the circumstance that there the father was in fact a pauper, and so the court expressly found, while the mother in this case was employed as á domestic servant, and earning and receiving wages as such.
*425 The mother signed this indenture, but she is nowhere mentioned in it or referred to by it. She is not therefore a contracting party, nor bound by it as such (Ackley v. Haskins, 14 Johns., 374.) If she were, I should hesitate under the decision in 8 Johns., 253, to award the child to her. Her signing is at most a mere assent to a proceeding which, if binding at all, was binding without it, and if it fail, the consent falls with the principal to which it was given,—an indenture by another and not by her.*
The statute (2 R. S., 155, § 10), requires that when a child shall be bound out by the overseer of the poor of any city or town “the indenture shall contain an agreement on the part of the person to whom such child shall be bound, that he will cause such child to be instructed to read and write, and if a male, will cause him to be instructed in the general rules of arithmetic ; and every such indenture shall also contain ah agreement that the master will give to such apprentice, at the expiration of his or her service, a new Bible.”
This indenture contains a clause that the master “ will teach the-child or cause it to be taught to read, write and cipher,” whatever that may mean, but it does not contain the clause that he “ will cause him to be instructed in the general rules of arithmetic.” It contains the other clauses required as above stated, but it is not subscribed or executed by Hosier, and there is nothing before me to show that he has made the agreement the statute requires.
The necessary assent to the indenture (sec. 6) to be given by the mayor, recorder and aldermen of the city, or any two of them, has not been given as required, and the assent given by the two justices is, I think a *426 nullity. The printed blank of the indenture recites and provides for the assent of two aldermen, and the fair reading of the statute.is, that in the towns only, as contradistinguished from the cities, the assent of justices of the peace is binding.
There are other defects of form in the indenture that I need not stop to notice.' The defects, and omissions I have already pointed out nullify the instrument—important requirements of the statute and an essential prerequisite are wanting, and I must decide that the child is not the apprentice of the respondent Hosier, and that he cannot lawfully retain it against the mother’s demand for its custody.

 See Landers v. The Staten Island Ferry Co., p. 346 of this vol.

 Compare People ex rel. Barbour v. Gates, 43 N. Y., 40 ; reversing 57 Barb., 291 ; S. C., 39 How. Pr., 74.