FREDERICK B. POTTER, APPELLANT, *v.* SYLVANUS K. GREENE AND WILLIAM EPES, AS EXECUTORS OF DAVID GREENE, DECEASED, RESPONDENTS.

*Indenture of apprenticeship — 2 R. S., 154, secs. 1, 2, 3 — when voidable by reason of the absence of the certificate of the justice — when the infant may recover for services he was compelled to render under duress of his supposed master.*

In January, 1871, the plaintiff, then of the age of fourteen years, became a party to an indenture of apprenticeship by the terms of which he, with the consent of his mother, bound himself as apprentice until he attained the age of twenty-one years to the defendants' testator. The instrument, which recited that the plaintiff's father had abandoned his family and was dead, was properly executed, except that there was no certificate indorsed thereon by a justice of the peace to the effect that the father had abandoned and neglected to support his family as required by the statute, although such abandonment and neglect had in fact occurred. The plaintiff, pursuant to this agreement, went to reside with the testator and remained there working for him between five and six years, when he left without the testator's consent and did not return. This action was brought to recover the values of the services rendered by the plaintiff during that time upon the ground that the indenture of apprenticeship was void, and that the services were rendered under duress.

*Held,* that the omission of the certificate of the justice rendered the indenture voidable at the election of the infant.

That so long as the plaintiff voluntarily remained in the service of the testator, pursuant to the terms of the instrument, no promise on the part of the testator to pay him for his services would be implied.

That if the plaintiff did not voluntarily remain in the service of the testator, pursuant to the indenture, but refused so to do, and sought to leave him and was compelled to remain by the threats or duress of the testator, then he would be entitled to recover in this action the value of the services so rendered.

That the facts in this case required that the question as to whether or not the plaintiff had been retained in the service of the testator by threats or duress should have been submitted to the jury.

APPEAL from a judgment, entered upon a nonsuit ordered at the Monroe Circuit.

The action was brought to recover for services alleged to have been performed by the plaintiff for the defendants' testator, who died during the pendency of the action, and the defendants were substituted as such.

*J. S. Garlock,* for the appellant.

*Walter S. Hubbell,* for the respondents.

Bradley, J.:

When at the age of fourteen years the plaintiff became a party to an indenture of apprenticeship of date January 1, 1871, by the terms of which he, with the consent of his mother, bound himself as apprentice until he attained the age of twenty-one years to the defendants' testator. The instrument was subscribed by those parties, and annexed was the written approval and consent of the mother of the plaintiff subscribed by her of the same date. In the body of the indenture it is parenthetically stated that the father of the plaintiff "being dead and having abandoned his family," etc. The plaintiff, pursuant to this agreement, went to reside with such testator, and into his service, and remained there between five and six years, when he left without the consent of Green and did not return. This action is brought to recover the value of his services. And in support of it the plaintiff's counsel contends that the instrument so executed was void, because: First. The father was then living, and the consent of the mother was ineffectual ;. and second. There was no certificate o1 a justice of the peace indorsed of the fact of abandonment and neglect by the father to provide for his family. The statute provides that an infant under the age of eighteen years may bind himself to serve as an apprentice with the consent of his father, and if the father "be dead or not of legal capacity to give his consent, or he shall have abandoned and neglected to provide for his family, and such fact be certified by a justice of the peace of the town, and indorsed on the indenture, then by the mother." (2 R. S., 154, §§ 1, 2.) And the consent required shall be in writing at the end of, or indorsed upon the indenture. (Id., § 3.)

Whatever view may be taken of this instrument and its effect, no promise on the part of Greene can be implied to pay for the services of the plaintiff while the latter voluntarily remained with him, in the relation in which such agreement of apprenticeship purported to place them, in respect to each other. The implication of a promise to pay was repelled by the fact that the plaintiff was with him and in his service pursuant to the terms of that instrument. ( *Williams* v. *Finch*, 2 Barb., 208 ; *Maltby* v. *Harwood*, 12 id., 473.)

It is contended that there was evidence tending to prove that the plaintiff did not voluntarily remain in such service, and that it was

sufficient to permit the jury to find that he was retained there by threats or duress of Greene, and therefore, by reason of the invalidity of the indenture of apprenticeship, the latter became liable to pay for the services. A promise will be implied to pay for beneficial services performed where the circumstances and relation do not rebut the implication. (*Lewis* v. *Trickey*, 20 Barb., 387.) And a liability may arise, where the services are obtained by fraud or duress, without any right to require their performance. This is upon the principle "that a party will not be allowed to show that he has himself committed a wrong in order to defeat an implied promise." (*Maltby* v. *Harwood*, 12 Barb., 479.)

On the part of the plaintiff testimony was given to the effect that the plaintiff said he would leave and go away, and that Greene said to him if he did he would bring him back, and then if he did not stay would put him in a place so as to know where he was, and spoke of the work-house, and the plaintiff testifies that he heard Greene say to his wife that if the plaintiff did run away he would arrest him and bring him back. This was not said to him or in his presence, but he says he was where he heard it.

The requests to submit to the jury the questions whether the threats of Greene constituted compulsion, and whether the plaintiff was held in his service by force and compulsion when he was under no legal obligation to perform service for him, were refused by the court and exception was taken.

There is no evidence tending to prove or to justify the conclusion that the apparent relation in which the indenture purported to place the parties was produced by any fraud or misconduct on the part of Greene, or that he used any improper means to cause such relation or to obtain the services of the plaintiff; nor is the conclusion required that he afterwards asserted any claim to such services which he did not believe was within the relation and right furnished by the instrument in question. Both parties evidently entered upon the discharge of the duties of the relation of master and apprentice in good faith. If, however, that instrument was absolutely void it was no justification for Greene to require the performance of services by the plaintiff against his will. But we think the indenture was not void, although it may have been voidable. For the purposes of an agreement of apprenticeship the statute

has removed the disability of the infant, and makes his execution of it effectual to charge him with the obligation which its terms import to create, provided it is executed in conformity with the statute. One of the requisites is that it be done with certain prescribed consent. The mother under some and defined circumstances is competent to give the consent. She has done it in this instance in the manner required. The fact of abandonment and neglect of the father (if living) is the requisite one to enable her so to consent as to support the agreement and make it binding on the part of the infant. That fact did exist; as it appears by the evidence of the plaintiff that the father and mother separated in 1866 or 1867; that he (the plaintiff) went with his mother, and thereafter the father never contributed to the support of his family or of the plaintiff. The mother, therefore, in fact came within the qualified condition provided for by the statute to furnish the requisite consent to enable the plaintiff to bind himself by the execution of the indenture. But we think that the certificate of the justice of the peace is so essential that it cannot be dispensed with, and that the existence of the fact permitting the certificate where not supported by it does not defeat the right of the plaintiff to invalidate the agreement, as the statute provides that it shall not be valid against the infant unless made in the manner prescribed. (2 R. S., 158, § 26.) The father does not seek to avoid it. It was probably valid as to the mother; and, at the most, it was as to the plaintiff voidable only. (*In re McDowles*, 8 Johns., 328; *Schermerhorn* v. *Hull*, 13 id., 270; *Fowler* v. *Hollenbeck*, 9 Barb., 309; *People ex rel. Barbour* v. *Gates*, 43 N. Y., 40–45; reversing 57 Barb., 294.) The defendant's testator was bound by the instrument, and if the plaintiff had remained with him until the expiration of the time provided for by it, he would have taken the benefit of its terms. (*Owasco* v. *Oswegatchie*, 5 Cow., 527; *Hamilton* v. *Eaton*, 6 id., 658.) The right of an infant to bind himself as an apprentice, did not depend upon statute. It was deemed binding at common law when for his benefit. (*King* v. *Arundel*, 5 Maule & S., 257.) The method by which he may be bound is wholly statutory in this State, and where he executes the indentures they are not void as to him, but voidable only for any substantial defect or omission in their execution, which is the rule applicable to other executory contracts of

infants. During the time he was with Greene, the plaintiff did or said nothing by way of avoiding the agreement, other than such as was inferable from his expressed purpose to leave. A purpose on the part of the plaintiff to leave the service of Greene, and the expression of such purpose, did not constitute a disaffirmance of the agreement and severance of the relation between them, nor did it, with the denial by Greene of his right to leave, have that effect. The fact that the relation of master and apprentice was lawfully instituted and voluntarily assumed, with the mere right of disaffirmance on the part of the plaintiff,' distinguishes the case from one where the services of another are obtained by force or fraud, and their continuance characterized by the like wrong. There the wrong is not available to defeat implication of a promise to pay. Here continuance in the service, after expression of purpose to leave, will be treated as restoration of purpose to remain and continue the same relation until the contrary is made to appear, which was evidenced by the act of the plaintiff in leaving. And while this gave effect to his purpose, the act did not by relation apply to the time the purpose was previously so expressed, so as to operate as a disaffirmance as of that time for the purposes of the relief in view in this action. But the question arises whether the evidence was sufficient to permit the conclusion that the plaintiff had, and expressed to Greene, the purpose to disaffirm the agreement, and was denied the exercise of such right by duress on the part of the latter, and that he thereafter continued in his service by the force of such duress and not by reason of the relation produced by the articles of apprenticeship. Duress, *per minas*, is not, as defined in 1 Blackstone's Commentaries, 131, confined to fear of loss of life or limb or mayhem, but in this State is held to embrace also threats and fear of unlawful imprisonment. (*Foshay* v. *Ferguson*, 5 Hill, 154; *Knapp* v. *Hyde*, 60 Barb., 80; *Dunham* v. *Griswold*, 2 Eastern Rep., 674; see to same effect *Taylor* v. *Jaques*, 106 Mass., 291; and with some qualification *Harmon* v. *Harmon*, 61 Me., 227; S. C., 14 Am. R., 556; *Seymour* v. *Prescott*, 69 Me., 376.) Although the plaintiff did not refer to the agreement, or in terms his right to disaffirm it, he did express a purpose to do that which in effect might operate as disaffirmance, and if he was prevented by duress, it is difficult, to see why that fact may not be available to him for the purpose of relief. The evi-

dence is not decisive that the plaintiff declared his purpose to leave with a view to disaffirmance of the indenture (which depended upon his intent to thus permanently sever his relation of apprentice), or that he remained thereafter in the service of Greene in any other relation than that which the indenture purported to give. And it may be that the latter in expressing his purpose to bring him back and put him in restraint if he did leave, had in view only what he believed his legal right justified him in doing. (2 R. S., 159, § 29.) The right of the plaintiff to leave the service of Greene and thus disaffirm the indenture, would render his arrest unlawful. And as the language used may be construed into a threat to arrest him if he left the service, we think there was sufficient in the evidence to present for the jury the question of fact for them to determine, whether the plaintiff had and expressed his purpose to leave, with a view to the disaffirmance of the agreement, and if he did, whether the defendant's testator threatened to arrest him if he did go away, and whether by fear of such arrest and by reason of it only, the plaintiff thereafter remained in the service of Greene under circumstances which fairly repel the inference that he did so in the relation of apprentice, pursuant to the indenture. For if his purpose to remain may be deemed to have been restored after the expression of his purpose to leave, so that he did not, in fact, stay under any new or different relation, he is not entitled to recover.

The plaintiff's right to maintain his action, depends upon a promise, expressed or implied, of the testator to pay him, other than that contained in the indenture agreement, and to justify a recovery it must be found that a new and different relation was in some manner produced. If the plaintiff was by force or duress denied the exercise of his right of disaffirmance, which he otherwise would have done, and was thereby continued in Greene's service, the latter could not make his wrongful detention available to defeat the implication of a promise to pay for services obtained in that manner, but if thereafter at any time before he left the service the purpose of the plaintiff was restored and he voluntarily continued in the relation of apprentice under the agreement, he could not assert the previous duress in support of any claim for services performed. And in no event could he recover for his services obtained by Greene otherwise than by such duress. But while duress may be

the result of the requisite threats, it is not necessarily produced by them. It depends wholly upon the effect they have upon the person to whom they are directed and comes from fear of their execution and its consequences, and thus deprives the person of voluntary action and places him under the influence and control of the menace against his consent or will. The evidence was sufficient for the consideration of the jury, and whether it established any fact to support the plaintiff's action founded in the charge of duress was for them to determine. That question, therefore, should have been submitted to the jury with proper instructions. We have proceeded on the assumption that the plaintiff's father was living when the indenture was made. If he was then dead, as recited in it, no certificate of a justice was necessary to effectuate the consent of the mother and the agreement was not voidable. (*People ex rel. Barbour* v. *Gates*, 43 N. Y., 40.)

We think there was no error in the refusal to submit to the jury the question whether there was any express promise of the defendants' testator to pay for the plaintiff's services. The fair construction of the evidence in that respect, and that which seems to be required, is that the expressions referred to of Greene had relation to the full performance by the plaintiff of his agreement to remain until he reached twenty-one years of age, and were in view only of such performance.

These views lead to the conclusion that the judgment should be reversed and new trial granted, costs to abide the event.

SMITH, P. J., BARKER and HAIGHT, JJ., concurred.

Judgment reversed and a new trial granted, with costs to abide the event.