ESTATE AND GUARDIANSHIP OF GERTRUDE A. SMITH, MINOR.

[No. 3,697; decided February 24, 1885.]

Guardianship—Welfare of Child.—The First Point to be Considered, in adjudging the custody or guardianship of a minor, is the best interests of the child with respect to its temporal, mental and moral welfare.

Guardianship—Preference of Minor.—In determining what is for the best interests of a child, in adjudging its custody or guardianship, the court may consider the child's preference, if it is of sufficient age to form an intelligent preference.

**Guardianship—Welfare of Child.**—In guardianship matters the court acts for and on behalf of the child, and must regard, as the paramount consideration, the interest and welfare of the child. To this every other consideration must yield.

**Guardianship.—The Father is Prima Facie Entitled to the Custody of His Child.** But this is not an absolute right; it may be controlled by other considerations; and, if the father is unable or unfit to take charge of the child and educate it suitably, the court will not interfere to take the child from those who are fit and able to so maintain and educate it.

**Guardianship—Father's Right to Child's Custody.**—As a general rule, courts assent to the proposition that natural right and public policy, as well as the safety of the social structure, require that the father should have the custody of his child. But this is not imperative upon the court; it bends to the interests of the child.

**Guardianship—Considerations in Awarding Custody of Child.**—It is within the court's sound discretion whether the custody of a child will be given to the father. The court should consider not only the father's fitness, but the condition of the child with its present custodians, its relation to them, the present and prospective provision for its support and welfare; the facts as to its present home—its duration, and whether with the father's consent, and upon understanding of permanency; the strength of the ties formed, and the child's wishes if it is of an age of discretion.

**Guardianship.—Where the Best Interests of a Child** require that it should remain in the home where it has been fostered from infancy, that consideration will be deemed paramount to the father's natural right, although the father is in every way competent and suitable.

**Guardianship.—The Custody of Minors is Always Within the Discretion** of the court; and this discretion is to be exercised in the light of the particular and peculiar circumstances of each case. The court is not bound to deliver the custody to any particular person, not even the father.

**Guardianship—Election and Nomination by Child.**—It has become the rule, in awarding the custody of a minor, to give the child, if of proper age, the right of election in the matter. In California, fourteen years is the age fixed, when the minor has a right of nomination, subject to the court's approval; and the law also permits a minor, "if of sufficient age to form an intelligent preference," to express such preference, which may be considered by the court.

**Guardianship—Child's Choice of Custodian.**—Mere mental precocity is not the test of a child's capacity to express a choice of custodian; acuteness of apprehension, sharpness of intellect on the part of the child, will not alone be sufficient for the judge. The minor must be capable of exercising a discretion in the premises;

its mere impulses will not weigh. In this case, a child thirteen years and eight months old was held "of a sufficient age to form an intelligent preference," within the meaning and intent of section 246, Civil Code, relating to the custody and guardianship of minors.

Guardianship.—The Welfare of a Minor Means Its Permanent, not temporary, welfare. The court is governed by that which, looking to the previous condition, and the future continued residence of the child, will contribute to its permanent happiness and welfare.

Guardianship—Examination of Minor.—In this case, in accordance with the practice of the court in matters of guardianship, the minor was examined, separate and apart, at length, first by the respective counsel and the judge, with the official reporter; then by the judge alone, counsel being absent; and finally was requested to express her own wishes in writing, she being alone and without any influence whatever. Her written views, with her transcribed testimony, were then filed as part of the record.

Guardianship.—One of the Objects of the Court's Private Examination of the Minor, in guardianship matters, is to discover the child's capacity; its appreciation of the object of the proceedings; the strength of the natural affections, and its idea of filial duty and parental right; and the child's freedom of expression, that is, absence of influence or teachings adverse to parents. The court looks with distrust upon any choice of the minor contrary to the natural affections in favor of a parent.

Guardianship Awarded to Aunt Rather than to Father.—In this case an application for guardianship of a minor was filed by its aunt, and a counter-application and opposition presented by its father, the mother being deceased. The minor was aged thirteen years and eight months, and held to have proven herself fully capable of expressing an "intelligent preference" in the matter, which she did in favor of her aunt, after undergoing a thorough examination. The child was born in the dwelling of her aunt while her parents were members of the aunt's domestic circle; and the mother and child ever afterward continued to live with the aunt until the mother's decease, when these proceedings were instituted. The child's mother had, some years before her death, obtained a divorce from the father, by default, and with it the custody of the child; and it was her last wish that her child should remain with the aunt.

Guardianship Awarded to Aunt—Right of Father to Visit Ward.— In this case the court found that the best interests of the child required that it should remain with the aunt, with the right of the father to visit and enjoy the society of the child at all reasonable times; and, in awarding the minor's custody to the aunt, the court said that the parties ought to reach an amicable understanding whereby the child should spend part of her time with her father,

and so allow opportunities for mutual affections and interests to grow up between her and her paternal relatives.

In the above matter, Caroline A. Taber filed a petition on October 16, 1884, praying to be appointed guardian of the person and estate of the minor, Gertrude A. Smith; setting forth, among other things, that the minor had no guardian appointed by will; that its mother was deceased; that the mother in her lifetime had been divorced from the father of the child, and had been awarded the custody of the minor; and that the only relatives of the minor were the petitioner, who was the aunt of the minor, petitioner's husband, and the children of petitioner. Upon the twenty-second day of October, 1884, Henry L. Smith filed a petition for the guardianship of the person and estate of the minor, alleging that he was the child's father and entitled to be appointed the guardian, and giving the names of the child's relatives as they were set out in the aunt's petition aforesaid.

On November 19, 1884, Smith filed objections to the granting of Mrs. Taber's petition, alleging; first, that he was the father of the minor, and entitled to guardianship in preference to Mrs. Taber, the child's mother being deceased; second, that Mrs. Taber was unsuitable to be guardian; third, that it was for the best interests of the minor, and most conducive to its temporal, mental and moral welfare, that he (Smith) should be appointed guardian; and fourth, that it was not the minor's best interests, etc., that Mrs. Taber be made guardian. Upon September 8, 1885, the court, in conformity with the opinion below, made an order and decree appointing Mrs. Taber guardian; and in the decree further ordered that: "Henry L. Smith, father of minor, be and he is hereby allowed to visit and enjoy the society of the said minor, at all reasonable hours, and to take her to fit and proper places with him at reasonable times."

Letters of guardianship were issued to Mrs. Taber October 10, 1885.

A. N. Drown, attorney for father, H. L. Smith.

J. E. McElrath, attorney for aunt, Mrs. C. A. Taber.

COFFEY, J. Gertrude A. Smith, the minor here, was born March 19, 1871, in this city, in the dwelling-house of

Jacob S. Taber, the father and mother of the minor being inmates of the domestic circle, the mother a sister of Mrs. Caroline A. Taber, one of the petitioners here, and the wife of Jacob S. Taber. At the time of the birth of Gertrude the family consisted of Mr. and Mrs. Taber, Mr. and Mrs. Smith, and the only child of the Tabers; subsequently, another child was born, and while the two families remained together there were three children and the grown persons, all living in comfort and in harmony. Subsequently, in about two years thereafter, the family moved to Oakland, and there resided for several years, until at the desire of the ladies, Mr. Taber decided to break up housekeeping, and removed to the Palace Hotel in San Francisco. Mr. Smith strenuously objected to this course, as he was averse to hotel life, but his wife persisting in her purpose, he permitted her to take up her abode with her child in the family of Mr. Taber, at the hotel, he remaining, as he has since remained, in Oakland, and living with his mother, an aged and estimable lady. Mr. Smith frequently visited his wife and child in San Francisco, and treated them with respect and consideration; but after a while his wife instituted a suit for divorce on the ground of failure to provide, which he did not resist, and the divorce was granted, and the custody of the child awarded to the mother. There is reason, from the evidence, to believe that the result of this suit was reached by mutual understanding; but however this may have been, the record must speak for itself. The parties to the suit continued friendly, and, indeed, throughout, Mr. Smith's conduct was amiable and conciliatory. The main burden of the support of wife and child was borne by Mr. Taber, although many items for tuition, clothing, etc., were paid by Mr. Smith. In August, 1884, while Mrs. Smith, Mrs. Taber and the children were in the country, the mother of the minor died at a place called Wawona, a station coming out of the Yosemite Valley. After this event Mr. Smith desired to obtain the custody of his child, and negotiations between himself and the aunt-applicant were carried on for a long time; but failing of amicable arrangement culminated in these proceedings. All the parties seem to be of good social standing, and, as the matter is before the court,

they are all entitled to respect. Mr. Smith occupies a station of trust, secretary of the board of trade, with good salary and fair prospects. Mr. Taber, the husband of the other applicant, is president of the same board, and is in constant business relations with the father of the minor and on friendly terms with him. It should seem that, under such circumstances, this controversy should have been settled out of court, and without recourse to the harsh and costly procedure of the law; but it is reserved now for the court to pass upon the facts and apply the law. In doing so, I may say in the language of Brewer, J., in Chapsky v. Wood (26 Kan. 651, 40 Am. Rep. 321, and note), a petition of a father for the possession of his minor child, that: "Counsel have in their arguments expressed very feelingly and truthfully the embarrassments and difficulties which surround the decision of a case like this."

And further to quote from the same learned judge , I may apply his description of the minor in that case to the one at bar: "The burden of the case is that the decision is one which involves the future welfare of a little girl; and I think no man can look upon the face of a bright and happy little girl, like the one before us, and come to the decision of a question which may make or mar her future life, without hesitation and feeling; certainly we are not so insensible as to be able to do it" (page 652).

Gertrude Smith is certainly entitled to the description here quoted. She is more than ordinarily intelligent and advanced in study; she has a happy temperament, a cheerful temper, a firm yet entirely reasonable disposition, and a full appreciation of the position which she is placed in by these proceedings. She was examined for hours, first by the respective counsel themselves, and the judge with the official reporter being alone; then by the judge without the intervention of counsel, they being absent; finally she was asked to remain entirely by herself, and without any influence whatever, to write her own views and indicate her own choice of custodian, which she did in plain and concise terms, as hereinafter transcribed. The first point to be considered by the court is, according to section 246 of the Civil Code of California, "the best interest of the child in respect to

its temporal, and its mental and moral welfare"; and "if the child be of a sufficient age to form an intelligent preference, the court may consider that preference in determining the question."

This court acts for and on behalf of the child, and must regard as the paramount consideration the interests and welfare of the child. To this every other consideration must yield. There is no doubt, as was said by the eminent Chief Justice Shaw, of Massachusetts, in Pool v. Gott et ux. (August 20, 1851, at Chambers; 14 Monthly Law Reporter (Vol. 4, New Series), p. 269; not elsewhere reported), that the father is prima facie entitled to the custody of the child. This is the law of California (Code Civ. Proc., sec. 1751; Civ. Code, sec. 197); but this is not an absolute right; it may be controlled by other considerations; if unable or unfit to take charge of the child and educate it in a suitable manner, the court will not interfere to take the child from the care of persons who are fit and able to maintain and educate it properly; but it may be said in this case, as Chief Justice Shaw said in the one before him, this is an exception which need not here be considered, for the evidence shows in this case that the father of Gertrude is in a good situation, pecuniary, domestic and social, and of a character and reputation against which no objection can be made.

On the other hand, the aunt-applicant and her husband are persons of respectability, in sufficient pecuniary circumstances, and have so far mainly educated and guarantee hereafter to educate the child in a proper manner. In their family the child has been reared from her birth, and, as she says, she "has known no other home." To them the child is devotedly attached, as appears by her private examination, conducted with great care and thoroughness, and with an earnest endeavor on the part of the examiners to elicit the exact truth; and I am satisfied, as Judge Shaw said in that case, "that a termination of this relation would be, for a long time at least, the cause of great suffering to her and them" (14 Law Rep. 269, 270, 271). But the counsel for the father-applicant contends for the natural right to the custody of the child, as expressed in the Code of Civil Procedure (section 1751) and the Civil Code (section 197); and

the learned counsel argues strenuously that his client has done nothing to impair that right, and that the court is bound now to respect the assertion of the father's right and to respond to his demand by delivering to him the minor. Both natural right and public policy, says counsel, as well as the safety of the social structure, require that the father should have the custody of the child (Schouler, Dom. Rel., cited). As a general rule courts assent to such demands, but they are not imperative upon the court. As was said by Judge Finn, in the matter of the Piercy minor, the custody is always within the discretion of the court—a discretion to be exercised in the light of the particular and peculiar circumstances of each case. The court is not bound to deliver the infant over to any particular person, for it is not a matter of right which even the father himself can claim at the hands of the court as against the interest of the child. In the case of Irma Linden, Judge Myrick [the predecessor of Judges Finn and Coffey in the probate forum, San Francisco] decided that where the father had intrusted his infant daughter to the custody of an aunt, at the request of his dying wife, that when the child had been a member of the aunt's family for six years, the custody would not be changed even in favor of the father, who appeared to the court to be entirely competent to support and educate his child   Judge Myrick's decision was placed on the ground that the best interests of the child required that she should remain in the home where she had remained from infancy, and that consideration was deemed by the court paramount to the father's natural right.

This decision is in accord with the best American authorities, and Judge Finn [the predecessor, in the probate department of Judge Coffey] thought it correctly stated the law. The cardinal principle relative to these matters is to regard the benefit of the infant; to make the welfare of the child paramount to the claims of either parent (Schouler, Dom. Rel., 248), and the primary object of the American decisions is to secure the welfare of the child and not the special claims of the parent (Schouler, Dom. Rel., sec. 248). It is sometimes a question (says Schouler, Dom. Rel., sec.

250), in proceedings relative to the custody of minors, how far the child's own wishes should be consulted. Where the object is simply that of custody, the rule, though not arbitrary, rests manifestly upon a principle elsewhere often applied, namely: That after a child has attained to years of discretion she may have, in case of controversy, a voice in the selection of her own custodian; the practice is to give the child the right to elect where she will go, if she be of proper age. What is proper age? Fourteen years is the age indicated by the code (Code Civ. Proc., sec. 1748) at which the minor has the right of nomination, subject to the court's approval. The Civil Code (section 246) allows the minor, "if of sufficient age to form an intelligent preference," to express such preference, which expression may be considered by the court in determining the question of custody. Let us inquire, now, what is meant by "intelligent preference." Mere mental precocity, as was observed by Lord Chief Justice Cockburn in Ex parte Barford (8 Cox C. C. 405, 408, 9 Week. Rep. 99, 3 L. T., N. S., 467), is not the test of the capacity of the child to express effectually a choice of custodian. If the child have arrived at an age to exercise a discretion in the premises, her wish may be consulted; but acuteness of apprehension, sharpness of intellect alone, is not sufficient to justify the judge in confirming her choice The action of the court will not be controlled by the mere impulses of a child of tender years. The welfare of the child means the permanent and not the temporary welfare. It is not what will please or gratify the child for a day or an hour which is to govern the court, but that which, looking to its previous condition and to its future continued residence, will contribute to its permanent happiness and welfare. Thorndike v. Rice, Supreme Court Massachusetts, 14 Law Rep., N. S., 19; opinion by Mr. Justice Bigelow. One of the objects of the private examination is to discover how far the child is capable; her appreciation of the situation in which she is placed; the strength of her natural affections; her idea of filial duty and of parental right; her freedom of expression, i. e., freedom from influence adverse to her father which might have taught her to determine in

favor of another. The court is concerned to ascertain her real desire; her free, voluntary choice of custodian; and so natural is the tendency of a child, normally constituted, to seek the protection of the author of its being, that the court looks with distrust upon any choice to the contrary.

Frequently courts have conformed to the wishes of minors under the age of fourteen, as in the case of Rex v. Smith, 2 Strange, 982, cited in the Matter of the McDowles, 8 Johns. 328, 331, where a boy under fourteen was brought up on habeas corpus, sued out by his father against his aunt, but the court merely left the boy at liberty to go where he pleased, and the boy chose to stay with his aunt.

In the Matter of the McDowles the infants were respectively eleven and eight years of age, and yet the court declared they were at liberty to go where they pleased, and the chief justice, asking the infants where they chose to go, they answered that they wished to return to their masters; afterward, upon the suggestion of the counsel for the father, that improper means and constraint had been used to influence their election, and that the answers were not freely given by them to the court, three counselors were appointed to examine the boys and discover their real desire; thereafter the examiners reported to the court that the boys, after being carefully informed of the purpose of the inquiry, expressed a decided and unequivocal desire to return to their masters, and a strong and unaccountable repugnance to go back to their father, and the court so ordered (8 Johns. 332).

In the State v. Libbey, 44 N. H. 321, 82 Am. Dec. 223, it was held to be within the sound discretion of the court, whether the custody of the child will be given to the father, and in determining the question the court should consider not only the fitness of the father for the trust, but the condition of the child with the person from whose custody it is sought to be taken, its relation to them, the present and prospective provision for its support and welfare; the length of its residence there, and whether with the consent of its father, and the understanding, tacit or otherwise, that it should be permanent; the strength of the ties that have been formed between them, and, if the child has come to years

of discretion, her wishes in the matter. This is a clear enunciation of the law, and commends itself to one's sense of justice (In re Scarritt, 76 Mo. 593, 43 Am. Rep. 768), and it has been recognized as correct doctrine in every well-considered American case.

Gertrude Smith is of sufficient age to form an intelligent preference; she is within a short interval of the time when she will have the right of nomination; her preference has been expressed, and the transcript of her testimony occupies one hundred and five pages of legal cap paper, and has been examined carefully by this court. In the private examination the judge strenuously endeavored to impress upon the mind and heart of this child her filial obligation, her duty to her surviving parent, the strength of his affection for her, his kindness to her, and his natural right to her custody, and his ability and willingness to provide for her in every way (see page 73 and following pages of the Reporter's Transcript of Testimony); but, while professing respect for her father, she resolutely refused to elect him as her guardian, declaring that in no wise was her refusal inspired by any influence, save her own judgment of what was best for her interests. In order to illustrate her determination, I will quote from her testimony (Trans., pp. 90-93):

The Court (questioning)—"It is a very serious matter for me to decide these questions. I don't want to decide so that hereafter you will say that my decision was unjust or unfair to you, or inconsistent with your happiness; nor do I want your father to say, if I should decide against him, that my decision was not right, and not based on sufficient grounds. Do you understand that?" Ans.—"Yes, sir." The Court—"You understand, also, that the law allows you to say something about what you prefer?" Ans.—"Yes, sir." . . . . The Court—"You have reasoned over this matter, you say?" Ans.—"I have thought a good deal, and have come to a conclusion which I think I can never change, am certain of that. That conclusion is that I want to live with my aunt, and don't want to go to my father." (Page 94, this testimony I here condense, preserving the language, avoiding repetitions.) In answer to the Court—"If you should decide to

give me to my father, I don't think I will be reconciled to it in a few months, nor say that you were right, and understood better than I. I should be very unhappy at such a decision. Indeed, I would feel very bad about it." The Court (page 96)—"Don't you think your father has some feelings, too? Didn't you ever consider that?" .... Ans.—"I feel this way: I am sure he would not feel any the worse for seeing me regularly, as he has always done, and maybe stay with him a week or two, and something like that, and then stay sometime with auntie, and then go back with him; and I know that she would be willing; but of course it must be different the other way." The Court—"You made me an answer, a while ago, that when you should be fourteen years of age you would be entitled to name your own guardian. How do you know that?" Ans.—"Mamma told me. . . . . She said to me she would be very happy when I was fourteen, and I asked why, and she said if anything I would be able to choose my own guardian." (Rptrs. Trs. Testy., p. 98.)

All through her examination the minor adhered to her desire to remain with those with whom she has been domiciled since her birth, and stated that her mother so desired in her last hours: "She wanted me to remain with auntie because aunt had been so good to her" (Reptrs. Trs., pp. 67, 68), etc.

Finally, at the instance of the court, the minor while alone wrote freely her desire, in these words:

"San Francisco, December 3, 1884.

"Judge Coffey:—My desire is to live with my aunt, Mrs. C. A. Taber, and hope you will consent to it. I am thirteen years and eight months. I am now going to the Denman School and getting along in my studies very well, being now number one of my room. We now live on 737 Ellis street, between Larkin and Polk. Hoping you will be of the same opinion as I am, in regard to living with my aunt, I remain,

"Yours respectfully,
"GERTRUDE A. SMITH."

It will be seen from the foregoing that the court has done everything in its power to ascertain what is for the best interests of this child, feeling an extreme reluctance to sepa-

rate that interest from the father's right, and paying great heed to the argument of his counsel. The right of the father has been considered fairly and fully; and the court very much regrets that its views of the minor's interests, and her own earnest entreaty, compel it to deny his petition. As was said in the case of Pool v. Gott, supra, this is eminently a case for amicable arrangement between the parties. Some agreement might have been made, might still be made, by which the child should spend part of her time with her father, to allow opportunities for mutual affections and interests to grow up between herself and her paternal relations; but it is not in the power of the court in this proceeding to decree any arrangement, except to permit the father freely to visit his child, at such times and places as may be suitable; and his counsel will propose such restrictions which, if agreed upon, will be accepted by the court; and, if not agreed upon, the court will settle the terms of the restrictions, subject to which the prayer of Mrs. Taber is granted.

The Father or Mother of the Minor if found by the court competent to discharge the duties of guardianship, ordinarily is entitled to be appointed guardian, in preference to any other person: Cal. Code Civ. Proc. 1751. This right of the parent may be lost by abandoning the child, or by such a course of conduct as makes him or her unfit to have its care and custody. The rigid rule of the common law which gave the father the right to the custody and services of his child, superior to that of the mother and all others, has been decidedly relaxed in modern times, and it is now universally conceded that the parental right must yield and be subordinated to the best interests of the child, even to the extent of its being placed in the hands of strangers. Indeed, neither parent has any right that can be made to conflict with the welfare of the child: In re Lundberg, 143 Cal. 402, 7 Pac. 156; In re Van Loan, 142 Cal. 423, 76 Pac. 37; Ex parte Becknell, 119 Cal. 496, 51 Pac. 692; Ex parte Miller, 109 Cal. 643, 42 Pac. 428; In re Vance, 92 Cal. 195, 28 Pac. 229; In re Galleher, 2 Cal. App. 365, 84 Pac. 352; Jones v. Bowman, 13 Wyo. 79, 77 Pac. 439, 67 L. R. A. 860; Rusner v. McMillan, 37 Wash. 416, 79 Pac. 988; Nugent v. Powell, 4 Wyo. 173, 62 Am. St. Rep. 17, 33 Pac. 23, 20 L. R. A. 199.

The Wishes of a Child, if he is of a sufficient age to form an intelligent preference, although not conclusive on the court, will always be given due consideration in determining who shall be named

guardian: Stapleton v. Poynter, 111 Ky. 264, 98 Am. St. Rep. 411, 62 S. W. 730. It is not necessary, in order for a child to enjoy this privilege, that he has reached the age of fourteen: Willet v. Warren, 34 Wash. 647, 76 Pac. 273.