## MALTBY vs. HARWOOD and WELLS.

12b 473
42ap374

A promise to pay for work and labor will never be implied, where it is manifest, from the conduct, situation, and mutual relations of the parties, that it was not intended.

Where a minor, indentured as an apprentice, serves his master in that capacity, until it is discovered, by the master, before the termination of the apprenticeship, that the indentures are void by reason of their not having been executed by the minor's father, and the apprentice is therefore discharged; the master is not liable, either to him or to his father, on any implied promise to make compensation for the services so rendered.

Although a contract of apprenticeship be void, yet while the parties reside together, mutually performing the conditions of that contract, the relation of master and servant exists, as really as if the indenture were binding. Upon the termination of that relation, neither party can have any claim upon the other, beyond the conditions of the contract. An agreement to pay the apprentice wages, under such circumstances, can not be raised by implication.

THIS action was brought to recover for work, labor and services, performed by the plaintiff for the defendants. It was tried at the Albany circuit in March, 1851, before Mr. Justice Parker. The complaint alledged that the defendants were trustees of the second family of Shakers in Watervliet, and as such were empowered to make contracts, and take apprentices, for the benefit of the family; that in April, 1839, the plaintiff, being then ten years old, was by his own consent and that of his parents, and by mutual agreement between them and the defendants, placed and bound an apprentice to the defendant, Stephen Wells; that on the 23d of December following, an indenture was executed by the plaintiff and his mother, and by Wells, whereby the plaintiff was bound as an apprentice to Wells, during his minority; that on the 15th of October, 1847, (the plaintiff being 19 years of age on that day,) the defendants wrongfully compelled the plaintiff to leave the said family of Shakers, and go to the city of Troy, where he was left without the necessaries of life, or compensation for his services. By means of which, &c. the plaintiff had been injured to the amount of $2000. The plaintiff also complained for that he was in the employ of, and did work, &c. for the defendants, from April, 1839, to October, 1847,

which labor, &c. was of the value of $500, and for which he had not been paid. The answer of the defendant Wells admitted that the plaintiff was in his employ during the period mentioned in the complaint, but denied that he was ever, by his own assent and that of his parents, bound an apprentice to him. He alledged that he was imposed upon by the plaintiff and his mother, and induced to believe that the plaintiff's father was dead, and that they had power to make a valid indenture of apprenticeship. The answer further stated that the defendant Wells, finding that the plaintiff would not learn, or behave himself, surrendered him to his mother.

The defendant Harwood, by his answer, denied that he was in any manner a party to, or interested in, the indenture set forth in the complaint; or that he was in any manner liable to the plaintiff. He also insisted that the complaint did not state facts sufficient to constitute a cause of action against him.

The reply of the plaintiff controverted the allegations in the answers, except that it did not deny that the indenture was invalid, by reason of not having been executed by the plaintiff's father.

Upon the trial, the plaintiff proved that he worked for the second family of Shakers, during the period mentioned in the complaint, and that his services were worth $10 per month, at least, for the greater part of the time. The defendants also called witnesses to prove that his services were not worth more than his board and clothes. The defendants gave in evidence the indenture of apprenticeship, executed by the plaintiff and the defendant Wells.

The testimony being closed, the defendants' counsel moved for a nonsuit, on the ground that the services having been performed under an agreement which precluded any implication or inference of a promise to pay for such services, there could be no express or implied contract for hiring or employing the plaintiff for wages, and there being no disputed fact, as to the manner and terms under which the services were rendered, there was, as to the right of recovery, nothing to be submitted to the jury. Also, on the ground that the father alone, if any one, could

Maltby v. Harwood.

maintain an action for the services ; and also, because no cause of action whatever had been proved against Harwood. The judge refused to nonsuit, and charged the jury that an implied promise might be sustained, notwithstanding the void indenture, but that the intention of the parties in entering into the indenture ought to be regarded, in assessing the amount of damages. The judge also refused to charge that the plaintiff's father only, and not the plaintiff, could recover for such services ; to which the defendants excepted. The judge also refused to charge that there was no evidence to make Harwood liable, and the defendants' counsel excepted. The jury found a verdict in favor of the plaintiff for $213, for which amount, with costs, judgment was perfected on the 9th of July, 1851. From this judgment the defendants appealed.

*R. W. Peckham,* for the plaintiff.

*M. T. Reynolds,* for the defendants.

*By the Court,* HARRIS, J. The theory of the plaintiff's action is, that the indenture of apprenticeship being void, the relation of the parties is the same as if no attempt had been made to bind the plaintiff as an apprentice ; and that, this being the case, the defendants are liable upon a *quantum meruit,* for the plaintiff's services.

It seems to have been assumed by the parties in their pleadings, and also upon the trial, that the plaintiff's father was still living. It was because the father was living and had not consented to the binding of the plaintiff, in the manner prescribed by law, that the indenture was void. It was insisted upon the trial, that the father being alive, this action, if maintainable at all, could only be maintained by him. I think this is so. The father is entitled to the services of his minor child, and to all that such child earns by his labor. He has the same right, in this respect, that the master has to the services of his apprentice. (*Reeve's Dom. Rel.* 290. *Nightingale* v. *Withington,* 15 *Mass. Rep.* 272.) But the father may emancipate his child.

This may be done by refusing him support, or denying him a home, or compelling him to labor abroad for his own living. Sometimes, too, it is done by giving or selling to him his time. When he is thus emancipated, he may make valid contracts for his own services, and may discharge such contracts by receiving payment himself. (1 *Bl. Com.* 453. *Galbraith* v. *Black*, 4 *Serg. & R.* 209, 211. *Jenison* v. *Graves*, 2 *Blackf.* 449. *Tillotson* v. *McCrillis*, 11 *Verm. Rep.* 477. *Burlingame* v. *Burlingame*, 7 *Cowen*, 92. *Shute* v. *Dorr*, 5 *Wend.* 204.) In the latter case, the plaintiff had put his son, a minor, to live with the defendant and work on his farm, until he arrived at the age of twenty-one; for which, among other things, the defendant agreed to pay the son $100 when his time expired. Afterwards, the son and the defendant disagreed, and by mutual consent, separated before the former became of age. The father brought the action to recover for the work, &c. of his son. Upon the question whether the action could be sustained in the name of the father, Sutherland, J. said, (page 206,) " Where there is no agreement, either express or implied, that payment may be made to the child, the parent alone is entitled to his earnings, and the action must be brought in his name." So, in this case, there being no proof of the emancipation of the plaintiff by his father, or of an intention to relinquish his right to receive the earnings of his minor child, those earnings legally belonged to and could only be recovered in the name of the father. If, in the opinion of the judge who presided at the trial, there were circumstances in the case which would have warranted the jury in finding, as a matter of fact, that the plaintiff had been emancipated, or that the father had consented that he should receive his own earnings, that question should have been submitted to the jury. (*Conover* v. *Cooper*, 3 *Barb. S. C. Rep.* 115.)

But, conceding that, if the action can be maintained at all, it may be brought in the name of the plaintiff, are the defendants, under the circumstances of this case, liable in an action for work, labor and services? No person is to be made a debtor without a contract, express or implied. Where there is no express promise to pay, the law, moving upon the very justice of the

Maltby *v.* Harwood.

case, will imply such a promise, when *ex æquo et bono,* the money is due. Such a promise to pay for work and labor, will never be implied, when it is manifest, from the conduct, situation, and mutual relations of the parties, that it was not intended. Ordinarily, it is enough for a party claiming compensation for services, to show that such services have been performed. The law will then raise an implied promise to pay. But when it is made to appear, from the facts in the case, that such compensation was not intended by the parties, the implication of a promise is rebutted, and the action must fail. A party is not to be made to promise *against his will.* Before he can be made liable for services, it must not only appear that the services have been rendered, but also that they were rendered in expectation of receiving wages.

Thus, where a woman, upon the death of her husband, returned to her father's house, and remained there for several years, rendering such services as are ordinarily performed by a child in the family of a parent, it was held that before she could maintain an action for such services, she must show that they were performed in the expectation of being paid therefor, and that the father so understood it, or had good reason to believe that she intended to make him her debtor for such services. (*Fitch* v. *Peckham,* 16 *Verm. Rep.* 150.)

In *Griffin* v. *Potter,* (14 *Wend.* 209,) Potter, the plaintiff in the original suit, was born a slave, and had been purchased by Griffin, the defendant. By the default of Griffin in complying with the provisions of the act for the gradual abolition of slavery in this state, Potter became entitled to his freedom when he was 18 years old. But he remained in the service of his master until he was nearly 21. The action was brought to recover wages after he was 18, and it was held that, under the circumstances, there was no ground upon which an implied promise to pay for his services could be maintained.

*Livingston* v. *Ackeston* (5 *Cowen,* 531,) was decided upon the same principle. Ackeston, though in fact a free man, had been purchased by Livingston as a slave. He worked for him supposing himself to be a slave. Afterwards, having ascer-

tained that he was free, he brought his action for work and labor. It was held that, inasmuch as it was understood by both parties, that no compensation was to be paid for his services, the law would not imply a promise to pay for them.

In *Williams* v. *Hutchinson*, (3 *Comst.* 312,) a minor child, upon the re-marriage of his mother, went to live in the family of his step-father. There was no agreement or understanding that he should receive wages or pay for his board and clothing. He left the family when he was 19 years old, and brought an action for his wages. It was held that having lived with the defendant as a member of his family, without any contract or understanding that he should be paid for his services, no promise would be implied. So, where a master, with the consent of his apprentice, assigned his indenture, and the apprentice went to live with the assignee and continued with him until he was 21 years old, in an action to recover for his services, it was held that, though the assignment might have been void, the voluntary continuance of the plaintiff with his new master, rebutted the presumption of a promise to pay for his labor. (*Williams* v. *Finch*, 2 *Barb. S. C. Rep.* 208.)

I cannot see why the principle which controlled the decision of these cases is not equally applicable to that under consideration. The plaintiff went to reside with the defendants as an apprentice, and not for wages. He continued with them, during the period for which he now claims wages as such apprentice, and not for hire. Neither he nor his parents, could have expected any other compensation for his services than that stipulated for in the indenture. Though the indenture was invalid for want of the father's written consent, the relation of master and apprentice subsisted *de facto*, so long as the plaintiff continued with the defendants. Both parties were acting under a mistake. They alike thought the plaintiff was bound as an apprentice. There is no reason to believe that the defendants would have kept the plaintiff for a single day, had they supposed that he was to receive wages for his services.

Had the plaintiff been *compelled* to render service for the defendants, when he was under no obligation to do so, perhaps the

Maltby *v.* Harwood.

action might have been maintained. The case would then have been within the principle upon which, *Negro Peter* v. *Steel,* (3 *Yeates,* 250,) was decided. There Peter had been taken by the defendant, in the revolutionary war, within the British lines, and held as a slave *against his will,* until he was discharged upon *habeas corpus.* He brought a suit for his services. The defendant insisted that, having held Peter *by force,* claiming him as a slave, he could not be supposed to have agreed to pay him wages. The plaintiff, on the other hand, insisted that though he had been held against his will, he might waive the tort, and proceed upon the implied assumpsit. The court held that where one does work for another *by compulsion,* when he is under no legal or moral obligation to serve him, the law will raise a promise to make him a reasonable recompense. The case turned upon the familiar doctrine, that a party may dispense with a trespass or wrong, and bring his action for the money justly due him.

So, in *Higgins* v. *Breen,* (9 *Missouri Rep.* 497,) cited by tho plaintiff's counsel, the decision proceeded upon the principle that a party will not be allowed to show that he has himself committed a wrong, in order to defeat an implied promise. The plaintiff had been fraudulently induced to marry the defendant's intestate, believing him to be unmarried, when in fact he had a wife living. She lived with him and managed his household affairs, until he died. In an action against the administrator for her services, the defendant was not permitted to defeat the action by showing the marriage. But, in the present case, no such element appears. It cannot be pretended that the plaintiff was under any *constraint,* or that he remained with the defendants *against his will,* or that the defendants were guilty of any wrong. The action can not, therefore, be sustained upon the principle of waiving a tort, in order to raise an implied promise.

The other cases upon which the plaintiff's counsel relies depend upon principles equally inapplicable here. In *Vent* v. *Osgood,* (19 *Pick.* 572,) the plaintiff, a minor, with the consent of his mother, his father being dead, had shipped himself as a mariner upon the defendant's ship, for a whaling voyage. Before

Maltby *v.* Harwood.

the ship returned, he deserted. He brought an action to recover for his wages while on board the ship. It was insisted for the defense that, having shipped for the whole voyage, and having deserted at a foreign port, without any just cause, he could not recover. But it was held that, being an infant, his contract was voidable, and having elected to avoid it, he might recover for the amount of services he had rendered in part performance of it. (*See also Medbury* v. *Watrous,* 7 *Hill,* 110 ; *Burlingame* v. *Burlingame,* 7 *Cowen,* 92.) These cases proceed upon the principle that when an infant avails himself, as he may, of his privilege of avoiding his contract, he must, on the one hand, restore what he has received on account of it, and may, on the other, recover for what he has paid or done in part performance of it.

In any view I have been able to take of this case, the plaintiff must fail in sustaining his action. It is agreed that the contract of apprenticeship was void. Yet while the parties resided together, mutually performing the conditions of that contract, the relation of master and apprentice existed, as really as if the indenture had been binding. Upon the termination of that relation, neither party would have any claim upon the other, beyond the conditions of the contract. An agreement to pay the plaintiff wages, under such circumstances, could not be raised by implication. My conclusion, therefore, is that the judgment should be reversed and a new trial awarded.

Judgment accordingly.

[ALBANY GENERAL TERM, February 2, 1852. *Parker, Wright* and *Harris,* Justices.]