WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—March, 1890.

MATTER OF RYDER.

*In the matter* of the estate of JACOB L. RYDER, deceased.*

Although the general rule is that as between members of the same family neither party can recover for services rendered in the absence of an express agreement, nevertheless, where it appears that extraordinary services have been rendered by one member of a family to another and that there has been no reciprocity of services possible, a claim for such services may be allowed against the testator's estate.

Testator, a paralytic, was in such a condition that he had to be attended to with the same care as an infant. *Held*, that his daughter who took care of him, with whom he lived and to whom he had made a general promise of reward was upon his death entitled to compensation out of his estate.

ACCOUNTING of executrices.

The testator died at his home in Mount Kisco on

the third of August, 1888, leaving him surviving as his widow, Hester M. Ryder, and his daughter, by a former wife, Sarah E. Hall, and the claimant, who is a daughter of his last wife. Mrs. Hall has been for many years residing away from home with her husband. The testator owned a house and lot in which he and his wife with the youngest daughter resided alone together until the latter was married to Mr. Dromgoole in or about the year 1881, when he also became a member of the family. No special agreement with him is shown but while the claimant and her husband continued to live in testator's house, Mr. Dromgoole and Mr. Ryder both contributed in furnishing supplies for the family. About February, 1887, the testator became so ill from softening of the brain as to require considerable care. As the disease progressed, more and more attendance and services were required, until, toward its latter stage, they were almost unremitting in their character. Attendant upon, and as a consequence of the disease, he lost control of his organs of evacuation, and a large part of the time was devoted by Mrs. Dromgoole to the cleansing of his person, his linen, and other clothing, bedding and the carpet of his room. He required watching lest he should wander away and much of the latter part of the period had to be confined in his room. The most of these necessary offices were rendered by Mrs. Dromgoole, as it was difficult to keep a servant on account of the foetid condition of the atmosphere of the house.

By his will, made prior to his illness, and in which his wife and Mrs. Dromgoole were appointed execu-

trices, he divided his property equally between his wife and two daughters.

Mrs. Dromgoole presented a claim for these services, in October last amounting to $2,160, but she had previously presented one for the same services, amounting to only $1,080.

WM. H. ROBERTSON, *for claimant.*

FROMME BROTHERS, *for* MRS. HALL, *legatee.*

THE SURROGATE.—Undoubtedly, the general rule is that as between members of the same family, neither party can recover for services rendered, in the absence of an express agreement or promise to pay. This rule is founded upon the idea of reciprocity between them, and the fact that the value or benefits received by one are greater than those received by the other, will make no difference. They must, however, be mutual. To illustrate : suppose this claimant had sought to recover for services rendered before the testator became ill, she would have been effectively met by the rule in question ; but when his illness became so serious as to deprive him of the power, in any manner, of reciprocating the care and kindness bestowed, and he became a grievous burthen, one would suppose the normal relation to have largely ceased ; and, while the law of nature demanded that he should be properly nursed and cared for by his child, yet that those services should receive some compensation from his estate, if he left any, as against those entitled to share it, who contributed nothing to the disagreeable work. The fact that Mrs. Hall had a family

of her own and lived at a distance was a sufficient reason why she could not share in the nursing, etc., which naturally fell upon the claimant, who was an immediate member of the family, but, as she could not contribute her personal services, it would seem but equitable that she should furnish an equivalent out of her portion of the estate. Our statute makes it the duty of the children, of sufficient ability, of any poor person, who is so impotent or decrepit, as to be unable by work to maintain himself, at their own charge, to maintain him. Why then, in a case of this kind should they not equally share, in some form, the burthen his illness and the circumstances cast upon one? And it may be remarked, in this connection, that in many cases cited by the learned counsel, as well as numerous others examined, none presents the precise state of facts under consideration here. In the leading case of Williams v. Hutchinson, 3 *N. Y.* 312, the claim was made by a step-son for services. So of Hill v. Hanford, 11 *Hun* 536. In Wotherspoon v. Wotherspoon, 49 *Super.* 152, there appeared to be only one son, and the claim related to the board of the father. Maltby v. Harwood, 12 *Barb.* 473, related to the case of a supposed apprentice, whose claim was not for wages. In Bowen v. Bowen, 2 *Bradf.* 336, a claim for wages was presented against the estate of his deceased brother. The case of Keller v. Stuck, 4 *Redf.* 294, approaches in its facts, more nearly to this than any that has been brought to my notice. An administratrix of a deceased sister, and the only next of kin, except a nephew and niece, sought to prove a claim for services in nursing the

intestate in her last illness. It did not appear what the nature and extent of the services were, and it was rejected on the strength of Williams v. Hutchinson.

In certain cases, where it is impossible from the circumstances, to imply a contract between the parties, the law will imply one, as if in the absence of a husband, a neighbor incur an expense in burying his deceased wife, in a manner suitable to the husband's condition in life, though without his knowledge the law will imply a promise to reimburse the person who incurred the expense. Jenkins v. Tucker, 1 *H. Bl.* 90. So one might suppose that if a person were so entirely insane as to preclude the possibility of his making a contract, and were to be kept, managed, cared for and controlled by another, a contract might be implied so that the value of the services rendered might be recovered; but the answer to that would probably be that a committee might have been appointed who would have been competent to contract for him.

The difficulty here, however, is that from the relation of the parties, as determined by most of the cases cited, no contract can be implied. There must be either an express agreement, or a promise to pay or reward for the services rendered, no matter how meritorious or equitable the claim may be.

This brings us to the question as to whether there was any valid promise of reward made by him to Mrs. Dromgoole, for her services. There is no doubt, from the evidence, that he made such promise, but counsel for contestant claims that he lacked mental capacity sufficient to render such promise of any binding force.

The testimony on the subject is very meagre, in view of the importance of it. There is an abundance on the subject of his physical weakness, but very little in the way of detailed facts and conversations, tending to furnish a key to his mental condition. It was doubtless somewhat variable. At times he talked of going home—probably intending to indicate the home of his youth. This, accompanied by an attempt to get away would lead to the belief in some intellectual aberration at the moment. Again, following a cleansing of his person, by the claimant, he would declare his intention to compensate her for the trouble he gave her. This showed a mind capable of being impressed by current facts and competent to apprehend their relations. He also told Hunter, his nurse, that he had made his will and correctly stated what disposition he had made of his property. Hunter conversed much with him, but it is to be regretted that we have no details of such conversations. Still, the evidence scant as it may be, is deemed enough to warrant the conclusion that he had sufficient intellect to make the promises he did.

It remains, therefore, to fix a reasonable compensation for the services. It is apparent that there was a progressive increase of them, as required and rendered; and for them a compensation cannot be expected, equivalent to that charged by skilled, trained nurses. It is believed that $1,000 being very near the amount of the bill first rendered, will be a fair compensation. As this amount will be deducted from the whole amount of the estate, each of the three who

owed the natural duty will have equally contributed her share.