ALMEDA J. CALLAHAN, Appellant, v. C. C. RIGGINS, Administrator, Respondent.

Kansas City Court of Appeals, January 5, 1891.

1. **Witnesses:** COMPETENCY IN ACTION V. ADMINISTRATOR : STATUTE CONSTRUED. The statute, in relation to the competency of parties as witnesses, provides that, where an executor or administrator is a party, the other party shall not be admitted to testify in his own favor, unless the contract in issue was originally made with a person who is living and competent to testify, except as to such acts and contracts as may have been done or made since the probate of the will, or the appointment of the administrator. *Held* the literal meaning of this exception is to confine the right of the other party to testify to those things that have occurred since there was an opposite party legally qualified to care for and protect the opposing interest. In case of an executor, this is the probate of the will; in case of an administrator it is by the granting

of letters, and the competency of the witness goes only to rebutting admissions or statements made since the appointment of the administrator. *Quære:* As to the acts done between the probate of the will and the qualifications of the executor.

2.  Contracts: PRESUMPTION AS TO COMPENSATION: BROTHER AND SISTER : FAMILY RELATION. The mere fact that plaintiff was a sister of deceased would not raise a presumption that she was performing services without expectation of compensation ; but, where in addition to such relationship, there exists a family relation between them, the usual implication of a promise to pay for the performance of valuable service does not obtain, and it. devolves upon plaintiff to show a contractual relation, expressed or implied.

*Appeal from the Gentry Circuit Court.*—HON. C.,H. S. GOODMAN, Judge.

AFFIRMED.

*Samuel H. Benson* and *Ed. E. Aleshire,* for appellant.

(1) We think the court erred in refusing to permit the plaintiff to testify on rebuttal as to alleged conversations testified to by the witnesses, Mrs. Frank Helton and W. Markley. There is a wide conflict of authorities now prevailing by reason of the different constructions placed on section 4010, statutes of 1879, now section 8918, and it is indeed difficult to fully harmonize them. *Ring v. Jamison,* 66 Mo. 424, and *Ward v. Matthews,* 73 Mo. 477, are in conflict with our views ; but see *Wade v. Hardy,* 75 Mo. 394, which expressly overrules the above cases. Plaintiff was offered as a witness for no other purpose than that of contradicting the above witnesses. (2) The court erred in giving instruction, numbered 1, for defendant, which was as follows: "1. The fact that the plaintiff is the sister of Truman E. Markley, deceased, raises the presumption that the services sued for were acts of gratuitous kindness, for which plaintiff was not entitled to pay, and unless she has shown by a preponderance

of the evidence that there was an understanding and agreement with her brother, Truman E. Markley, deceased, that she was working for wages, and that she was to receive pay therefor, she cannot recover, and you will find for the plaintiff." We are not inclined to the belief that because the plaintiff was a sister of the deceased that the law presumes that her services were voluntary, and not to be paid for. It is a question for the jury to determine from all of the circumstances in the case, and from the degree of relationship between the parties, whether or not such is the case. The reverse proposition is the rule as between strangers ; but that rule may be modified by the degree of relationship existing ; but in no case can it become a legal presumption of law. *Smith v. Meyers*, 19 Mo. 433 ; *Houser v. Sain*, 74 N. C. 552. In the case at bar the plaintiff was requested by her brother to come and live with him and take care of the children—see deposition of J. F. Knapp, pages 9, 10 and 11. It was not necessary under such a state of facts, to prove an express agreement or specific contract. *Guenther v. Birkicht*, 22 Mo. 439 ; *Andrews v. Foster*, 17 Vermont, 556 ; *Hart v. Hess*, 41 Mo. 441. The burden of proof was on the defendant to show that the family relations between plaintiff and her brother exclude the presumption to pay for the services. *Curry v. Curry*, 114 Penn. St. ; 7 Atl. Rep. 61–63.

*McCullough & Peery*, for respondent.

(1) The court did not err in refusing to permit the plaintiff to testify in rebuttal as to the conversation had with Mrs. Helton and W. Markley. These conversations were had long prior to the issuance of the letters of administration, on November 28, 1888, and therefore the plaintiff was incompetent to testify under the express provisions of section 4010, Revised Statutes, 1879. R. S. 1889, sec. 8918. It is true that formal

Callahan v. Riggins.

proof of the will had been made on October 12, 1887; but no letters were granted, and no administrator was appointed, until November 28, 1888, long after the conversations had with these witnesses. The statute clearly shows that it was intended to make the party competent only as to contracts made or acts done with the administrator. Hence until the appointment of the administrator the party is incompetent. The making of formal proof is only a part of the probate of a will. There must also be an executor or administrator appointed to complete the judicial act, and this is done by the issuance of the letters. The case of *Ring v. Jamison*, 66 Mo. 424, has been repeatedly affirmed by our supreme court. *Hisaw v. Ligler*, 68 Mo. 449; *Wood v. Matthews*, 73 Mo. 479; *Angell v. Heister*, 64 Mo. 152; *Hughes v. Israel*, 73 Mo. 546, *loc. cit.; Julian v. Calkins*, 85 Mo. 206, *loc. cit.; Meier v. Theiman*, 90 Mo. 433; *Goddard v. Williamson*, 72 Mo. 133. *loc. cit.* (2) There was no error in giving defendant's first instruction. The plaintiff was the sister of deceased. For more than six years she lived with him as a member of his family, and was treated by him as such, and with the utmost affection and consideration. Before that she had no home, save such as the charity of her brother-in-law provided her. In such cases the law does raise the presumption that the services are gratuitous, and it does devolve on the plaintiff to show that there was an agreement or understanding that she was working for wages, and that she was to receive pay therefor. This presumption may arise wherever the family relation has been assumed, even where the parties are not bound together by the ties of blood at all. Such has ever been the law of this state. *Smith v. Meyers*, 19 Mo. 433; *Guenther v. Birkicht*, 22 Mo. 439; *Morris v. Barnes*, 35 Mo. 412; *Hart v. Hart*, 41 Mo. 442; *Reando v. Misplay*, 90 Mo. 251; *Cowell v. Roberts*, 79 Mo. 219; *Woods v. Land*, 30 Mo. App. 176; *Koch v. Hebel*, 32 Mo. App. 103; *Brock v. Cox*, 38 Mo. App. 40.

ELLISON, J.—This action is based on the following account:

"In the matter of the estate of Truman E. Markley, deceased. The estate of Truman E. Markley, deceased, in account with Almeda J. Callahan, for services rendered as housekeeper for said Truman E. Markley in his lifetime at his instance and request, from the twentieth day of March, 1881, to January 24, 1888, as follows: From March 20, 1881 to March 20, 1882, as housekeeper, $100; from March 20, 1882, to March 20, 1883, as housekeeper, $100; from March 20, 1883, to March 20, 1884, as housekeeper, $100; from March 20, 1884, to March 20, 1885, as housekeeper, $100; from March 20, 1885, to March 20, 1886, as housekeeper, $100; from March 20, 1886, to March 20, 1887, as housekeeper, $100; from March 20, 1887, to January 24, 1888, and taking care decedent's stock, $100; for boarding Geo. L. Markley, son of decedent, fifty-two weeks at $1 per week, $52; for money paid out for medical attendance on said Geo. L. Markley, and for clothing and school books, $12; total amount due, $764."

The judgment was for the defendant in the circuit court, and plaintiff brings the case here. The case shows without controversy that plaintiff was a sister of the deceased; that deceased's wife had died leaving him with two small children; that just before his wife's death he sent for plaintiff to come to his house; that she was then unmarried and living with her brother-in-law as a member of his family, receiving no compensation; that she went to deceased's house and lived with him up to his death (a period of six or seven years) as one of the family; that she faithfully performed general household services; that she had charge, control and management of the children and domestic affairs about in the same way a wife would; that no express contract was made as to compensation; that nothing was ever said by her or deceased to one another about a contract

or compensation; but that deceased declared or said at different times to others that plaintiff should be well paid; that she should not lose anything; that she had performed for him service he could not have done without; that he intended to provide for her; that they lived together affectionately and kindly as would be expected of brother and sister; that they went to church and into society in each other's company; that just before his death deceased made a will in which he provided as follows:

"*First*, I appoint my sister, Almeda J. Markley, my executrix to manage and control all my property and effects of which I am possessed for the use and benefit of herself and my son, George Leland Markley, as long as she remains single and unmarried, and lives with my son on my farm until my said son, George Leland, arrives to the age of twenty-one (21) years old, at which time, if my said sister, Almeda J., continues single, I bequeath to her one-third part of all lands that I now possess as additional compensation for her trouble and watchcare over my child. My sister, Almeda Jane, is to have entire control of my lands and property until my son is twenty-one years old." Plaintiff took possession of the property; sold personal property, and took notes for purchase money in her own name; she married several months after her brother's death and removed from the farm, and afterwards, about sixteen months after the death, presented the claim herein.

I. The first question we are asked to review is, as to the court's action in excluding plaintiff as a witness in her own behalf, wherein it was sought to have her testify in relation to certain statements which according to witnesses for the defense she had made since the death of deceased. These statements were made after the probate of the will but before the appointment of the administrator. Our opinion is that the circuit

court was right in excluding plaintiff. The provision of the statute by way of exception is as follows: "Where an executor or administrator is a party, the other party shall not be admitted to testify in his own favor, unless the contract in issue was originally made with a person who is living and competent to testify, except as to such acts and contracts as have been done or made since the probate of the will or the appointment of the administrator." The main provision of this statute and what we have not quoted is to enable parties to testify who were disabled by the common law. But in order to maintain equality as near as possible the exception is made that where one party is disabled by death the other shall not testify; and that where an executor or administrator is a party the other party shall be disabled, unless where the contract is made with a person living and competent to testify and except as to acts and contracts done or made' *since* the probate of the will or the appointment of the administrator. The literal meaning of this exception is to confine the right of the other party to testify to those things which have occurred since there was an opposite party legally qualified to care for and protect the opposing interests. In case of an executor this is by the probate of the will; in case of an administrator it is by the granting of letters. If "acts" were "done" *between* the time of the probate of the will and the qualifying of the executor as provided by law, we need not say what the result would be, further than to remark, that possibly there are things which would affect the executor as *trustee*, as distinguished from his executorship, and which, therefore, might not require his having qualified as executor in order to enable the other party to testify to those things happening since the probate of the will, but of this we make no decision.

Some confusion has arisen in the adjudications of the question like the one before us. The cases of *Ring*

*v. Jamison, Adm'r*, 66 Mo. 424, and *Woods v. Matthews*, 73 Mo. 482, are overruled in respect to this question by the case of *Wade v. Hardy*, 75 Mo. 394; yet, it does not appear in either of the former cases whether the conversations were before or after the appointment of an administrator. Of the cases cited in *Wade v. Hardy*, as being opposed to the cases of *Ring v. Jamison* and *Woods v. Matthews, Martin v. Jones*, 59 Mo. 181, and *Poe v. Domic*, 54 Mo. 123, do not appear to have been cases where an administrator was a party, and, therefore, the question here was not in the mind of the court, nor was the exception to the statute, we are considering, before the court. The other case cited is *McGlothlin v. Henry*, 59 Mo. 213. That case was where an administrator was a party plaintiff, and SHERWOOD, J., does very properly say that the defendant was a competent witness as to matters occurring between him and the administrator. Notwithstanding the Missouri cases cited and referred to by Judge HOUGH in *Wade v. Hardy*, it is clear to my mind that his opinion was that, on the exceptions to the statute we are here considering, the competency of the witness went only to rebutting admissions or statements made since the appointment of the administrator. By reference to the cases from Massachusetts cited therein, it will be found that they so confine the competency of the witness. We, therefore, rule this point against appellant.

II. The next objection is as to instructions given and refused. Those given for defendant are earnestly criticised by plaintiff's counsel, and if disconnected from the evidence some of these criticisms would be just. It is quite true that the mere fact that plaintiff was a sister of deceased would not raise a presumption that she was performing services for him without expectation of compensation, but it must be remembered that the case shows without contradiction or denial that they were not only brother and sister but

that they lived together and occupied a family relation. When such is the case the usual implication of a promise to pay for the performance of valuable service does not obtain, and when such relation is shown to exist at the time of the service it then devolves upon plaintiff to show and establish a contractual relation, express or implied. Considering the instructions as applied to the evidence, which clearly shows the circumstances of this case, we think they are within the principles of law as declared in *Wood v. Land*, 30 Mo. App. 176; *Brock v. Cox*, 38 Mo. App. 40; *Smith v. Meyers*, 19 Mo. 433; *Guenther v. Birkicht*, 22 Mo. 439; *Cornell v. Roberts*, 79 Mo. 219. There is no testimony going to show that plaintiff intended or expected to charge for her services. It is true statements of deceased were shown whereby he recognized that his sister was of great assistance to him, and in which he declared she should be provided for. But, when these statements are considered in the light of surrounding facts, they go more to rebut contractual relations than to establish them. The will itself shows that he gave effect to his declarations and intentions by providing for her. We may say as was well said by Judge MARTIN in *Cornell v. Roberts*, 79 Mo. 219, it is quite unnatural to presume that Markley, an economical as well as kind-hearted man, would permit a debt owing to his needy sister to run through a series of years without a single payment, and finally to provide a bounty for her by his will without mentioning the debt.

We have considered the other different points and suggestions of counsel, but think no error was committed. We are satisfied the verdict was for the right party, and affirm the judgment. All concur.