EDA HICKAM, Plaintiff in Error, v. JAMES HICKAM, Administrator, Defendant in Error.

Kansas City Court of Appeals, November 9, 1891.

1.  **Quantum Meruit:** IMPLIED PROMISE IN THE ABSENCE OF INTEN
TION : DURESS OR FRAUD. The law implies from men's conduct and
actions contracts and promises as forcible and binding as those
made by express words, and such contracts are implied sometimes
in the furtherance of the intention, or presumed intention, of the
parties, and sometimes in ;furtherance of justice, without regard
to the intention of the parties. And a promise to pay for services
rendered or money obtained will be implied against the wrongdoer,
who never intended to pay, or intended deceitfully to avoid pay-
ment ; and whether labor is security through duress, compulsion
or fraud can make no difference.

Hickam v. Hickam.

2. ———— : ———— : IGNORANCE OF LAW : MAXIM : FRAUD : SLAVE. The maxim, *ignorantia legis neminem excusat,* is relaxed in cases of imposition, misrepresentation, undue influence, misplaced confidence and surprise ; as if a girl born and raised a slave, ignorant, unable to read, and for a series of years kept under a strict surveillance and in utter ignorance of her emancipation and right to her own labor, and taught to believe she was still the property of her old master, should continue to work for her old master without intention to receive pay on her part, or to give on his part, her ignorance of her legal rights would not defeat her action for such work and labor brought after she learned of the fraudulent suppression.

3. ———— : ———— : GROUND OF RECOVERY : INSTRUCTIONS. In an action by such girl against her old master for services, she must recover, if at all, regardless of the intention of one or the other, for the reason, and that alone, that she was induced by the conduct of her old master to render services for him under the belief that she owed him such labor as his slave. Instructions set out in the opinion reviewed and criticised. ·

4. ———— : LIMITATION : FRAUD. Where a girl, born a slave, has by the fraudulent conduct of her old master been induced to continue to labor for him in ignorance of her rights for twenty-four years after her emancipation, the cause of action for such services, if any there is, accrues on the discovery of the fraud; her claim is an entirety for the whole, and the five years' limitation does not apply to bar all but the last five years' service.

*Appeal from the Cooper Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED AND REMANDED.

*John Cosgrove* and *J. H. Johnson,* for plaintiff in error.

(1) The trial court erred in refusing to instruct the jury as requested by the plaintiff. Where a person, under a mistake of fact, is induced by the fraud and concealment of another to perform for him valuable services, the law raises an obligation to pay what the services are reasonably worth, although when rendered there was no expectation that they should be paid for.

*Higgins v. Breen*, 9 Mo. 497; *Boardman v. Ward*, 40 Minn. 399; 12 Am. State Rep. 749. " Where one compels another to render services for him, and such services are rendered under duress, or because of a mistaken understanding that they are legally due *to the person for .whom they are rendered, a recovery therefor may be had on a *quantum meruit*." Wood on Master & Servant, sec. 684, notes; *Patterson v. Crawford*, 12 Ind. 241; *Black v. Meaux*, 4 Dana (Ky.) 188; *Jarrot v. Jarrot*, 2 Gilm. 111; *Peter v. Steel*, 3 Yeates (Penn.) 250. Where services are rendered and accepted, the presumption is that they were to be paid for, and the burden is upon the party receiving such services, to show that they were rendered under such circumstances that indicate that they were gratuitous. See authorities above cited.

*Draffen & Williams*, for defendant in error.

( 1 ) Plaintiff's first instruction was properly refused. *First.* There was no evidence on which to base it. *Cottrell v. Spiess*, 23 Mo. App. 35; *Miller v. Railroad,* 90 Mo. 389; *Bean v. Railroad*, 20 Mo. App. 641; *Huff v. Morton*, 94 Mo. 405. The evidence excluded by the court, of course, cannot be considered in determining what instructions should have been given. *Cantwell v. Stephens*, 57 Mo. 589. *Second.* This instruction was further objectionable, because it singled out particular evidence, which, in any event, would not, of itself, have authorized a recovery, and gave it undue prominence. *Chouteau v. Iron Works*, 83 Mo. 73. *Third.* The instruction did not properly declare the law. There is no pretense, that the plaintiff was compelled to work for the deceased, nor is there any evidence that she acted under a mistake of fact. She is conclusively presumed to have known, that, under the law of the land, she was a free woman. "Ignorance of

a material fact may excuse a party from the legal consequences of his conduct; but ignorance of the law, which every man is presumed to know, does not afford excuse." *Norton v. Highleyman*, 88 Mo. 625; Broom's Legal Maxims, p. 192; *White v. Collier*, 5 Mo. 32. *Fourth.* It is conceded, in this court, that the plaintiff did not expect to charge for her services at the time they were rendered, and that she was not entitled to recover upon the ground that she intended to charge and Hickam expected to pay therefor. She was, therefore, not injured by the refusal of her second and third instructions, submitting that issue, even if they had asserted a correct proposition of law. *Callahan v. Riggins*, 43 Mo. App. 130. (2) Where services are voluntarily rendered, under the belief that they are legally due, and not under any mistake of fact, and without any intention upon the part of the one performing them to charge therefor, or upon the part of the recipient of them to pay for same, the law will not imply a promise to pay for such services. *Maltby v. Harwood*, 12 Barb. 473; *Livingston v. Ackeston*, 5 Cowan, 530; *Griffin v. Potter*, 14 Wend. 209. (3) Defendant's second instruction is correct. The evidence in the case did not justify a finding for the plaintiff. The only ground upon which the plaintiff could have maintained such a suit was, that she was compelled to render services for the deceased, and that such services were rendered under duress, of which there is no evidence in this case. There was no mistake of fact, and no implied promise arising from circumstances showing an intention to charge; and the plaintiff could not recover, unless the evidence showed that she rendered the services sued for under compulsion. *Peter v. Steel, supra; Patterson v. Crawford*, 12 Ind. 241; *Jarrot v. Jarrot, supra.* (4) The defendant's sixth instruction becomes immaterial, as the finding was for the defendant. The instruction, however, correctly stated the law applicable to such claims as the one at

bar.    There was no open, mutual account between the
parties.    The rule contained in the instruction was held
applicable to a suit for services in *Application of
Gardner, Adm'r,* 5 Cent. Rep. 371; *Davis v. Gordon,* 16
N. Y. 225.

GILL, J.—At the December term, 1889, the plaintiff
presented to the probate court of Cooper county, for
allowance against the estate of Joseph Hickam, deceased,
the following account :

" *The Estate of Joseph Hickam, deceased, To Eda
Hickam ( colored ), Dr. :*
" To services rendered by said Eda Hickam for the
said Joseph Hickam as house and general servant from
the eighteenth day of February, 1865, to the twenty-
third day of February, 1889, being twenty-four years
and five days, at the rate of $5 per month, amounting
in the aggregate to the sum of $1,440.85."

The case was tried before a jury in the probate
court, and judgment rendered for the plaintiff for
$785.29, from which the defendant appealed to the cir-
cuit court of Cooper county, where a trial was had
before a jury, resulting in a verdict for the defendant,
whereupon the plaintiff sued out her writ of error, and
brought the case to this court.    We make the following
brief statement of the facts as set out in counsel's brief
upon which plaintiff's demand is based :

Prior to the Civil War and up to the date of the
emancipation of slaves in Missouri, the plaintiff was
the property of Joseph Hickam, now deceased, who
lived in Moniteau county, Missouri, from whence he
removed to Cooper county, where he died in the year
1889.    At the time of the abolition of slavery in Mis-
souri the plaintiff was about twenty-three years old.
From childhood she had been the slave of said Joseph
Hickam ; had no education, and had had very little
intercourse with anyone outside of the family of her

owner.   She claims ( and there is some evidence to sustain her) that during the war and until the death of her "old master," Joseph Hickam, she was not allowed to, and never did, leave his premises except in the company of a member of the Hickam family ; that she was not allowed to visit any of her own race, and no colored person, not even her stepfather, was allowed to talk to her alone ; that she was never permitted to go to church or public gatherings of any kind, and lived in absolute ignorance of the fact that the negroes had been set free, or that she was a free woman, until after the death of her master, Joseph Hickam. During the whole of the time, from the abolition of slavery in Missouri until the death of Joseph Hickam ( twenty-four years and five days ), she lived and served as his slave in total ignorance of her rights, and without any remuneration or reward for her services, except what she had received while she was in fact a slave, to-wit, her food and clothing. The theory upon which plaintiff's claim is based is, that if by fraud, deceit or duress she was kept in ignorance of her rights by the said Joseph Hickam, whereby she was induced to and did render him services, then she is entitled to pay for the same, although he may not have intended to pay her, and she may not have expected to charge for such services.

At the trial in the circuit court, plaintiff asked several instructions, all of which were refused. Among these so refused was the following: "1. If the jury believe from the evidence that prior to the emancipation of slaves in the state of Missouri, to-wit, the fourth day of July, 1865, the plaintiff was the slave of Joseph Hickam, deceased, and that after said date the plaintiff continued to live with the said Joseph Hickam, and worked for him and his family until the date of his death, to-wit, the twenty-third day of February, 1889; that during all that time she was prevented from associating with people of her color, and was kept in ignorance of the fact that the negroes had been freed, and

that she was at liberty to leave if she wished, and that she was kept in such ignorance by said Joseph Hickam, for the purpose of retaining her services without pay, then you are instructed that she is entitled to receive for her said services such remuneration as you may believe, from all the evidence in the case, such services were worth, not exceeding the sum of $5 per month, with interest thereon at the rate of six per cent. per annum from the date of the presentation of said claim to the probate court of Cooper county, Missouri, to-wit, the ninth day of January, 1890.''

Of the instructions given by the court at the request of the defendant, we call attention to the following: "3. The jury are instructed that there is no evidence in this case that there was an express contract between the plaintiff and Joseph Hickam for the payment of wages to her, and the sole and only issue submitted to the jury is whether or not there was any implied contract between the plaintiff and said Joseph Hickam. And although the jury may believe that the plaintiff continued to live with the said Joseph Hickam after she became free, and she rendered valuable and meritorious services, still, unless they further believe from the evidence that at the time she rendered the services she expected to charge wages therefor, and the said Joseph Hickam knew that she intended to make said charge, there can be no recovery in this case.

"4. The jury are instructed that even though they may believe that the plaintiff continued to live with and work in the family of the said Joseph Hickam after the legal emancipation of the slaves, and after she became free, and that she did this in ignorance of the enactment of the law making her a free woman, still this will not authorize a recovery against the said Joseph Hickam's estate in this case if the services were rendered without expectation upon her part of receiving wages therefor, and without the intention on his part of paying therefor.

"5. The jury are instructed that, although they may believe that the plaintiff continued to live with Joseph Hickam, deceased, for twenty-four years after she became free, and that during that time she worked for, and rendered to him valuable services, still she cannot recover in this case, no matter how meritorious her services may have been, unless the jury shall believe from the evidence that at the time she was rendering said services she intended to charge Joseph Hickam therefor, and that said Joseph Hickam understood at the time said services were being rendered that she expected to make said charges, and the burden of showing that the services were rendered under the expectation on the part of the plaintiff of charging, and on the part of Joseph Hickam of paying therefor, is upon the plaintiff, and unless this proof has been made the finding must be for the defendant.

"6. The jury are instructed that the plaintiff cannot recover for any services rendered more than five years prior to the death of the said Joseph Hickam, as the right to recover for any services rendered more than five years prior to his death is barred by the statute of limitations."

I. It will be seen by a comparison of plaintiff's refused instruction with the instruction given for defendant, that the trial court declined to adopt the theory that if the negro girl, Eda, was induced by the fraudulent concealment of her rights by the said Joseph Hickam to labor for his benefit without pay, that then she ought to recover the value of such services; *but* held that the plaintiff could not recover, however valuable the services may have been, unless "the jury should believe from the evidence that at the time she was rendering said services she intended to charge Joseph Hickam therefor, and that the said Joseph Hickam understood at the time said services were being rendered that she expected to make said charge," etc. In other words, the jury was advised that, even admitting the

charge that Joseph Hickam did by his fraudulent practices hold the said Eda in practical bondage years after the emancipation, and that, in utter ignorance that she was free, the plaintiff performed valuable labor for said Joseph Hickam, yet that there was no implied obligation on him to pay therefor, *because* she, the plaintiff, at the time expected no reward, nor did Hickam expect to pay anything therefor.

We do not understand this to be the law in this character of case. An implied promise does not always depend upon the existence of *intention in fact* of the one to pay and the other to receive. The law frequently affixes a promise to pay even contrary to actual intention. As well expressed by an eminent author: "The law implies from men's conduct and actions contracts and promises as forcible and binding as those made by express words, and such contracts are implied sometimes in furtherance of the intention, or presumed intention, of the parties, and *sometimes in furtherance of justice without regard to the intention of the parties*. Thus a promise to pay for services rendered, or for goods received, or money obtained, will be implied against the wrongdoer who never intended to pay or intended deceptively to avoid payment." 3 Add. on Cont., sec. 1399 ; 1 Hilliard on Contracts, sec. 20, p. 65.

This same doctrine found practical application in an early decision by our supreme court. *Higgins v. Breen, Adm'r*, 9 Mo. 497. McNally left his wife in a foreign country, came here and solicited the plaintiff, Rosaline Higgins, to marry him ; she consented and was married to him, trusting to McNally's false and fraudulent representations that he was single. It was only after the death of McNally that the plaintiff became informed of the truth. She then sued the estate for the value of her services as housekeeper for McNally during the time she had lived with him, and she was allowed to recover, although, of course, while

performing the services she in fact expected no compen-
sation.    Nor did McNally expect to pay anything.    He
was held, however, on an implied contract, regardless
of the intention of the parties.    In point see also, *Negro
Peter v. Steel*, 3 Yeates ( Pa.) 250 ; *Boardman v. Ward*,
40 Minn. 399 ;  Wood on Master & Servant, pp. 96, 106,.
107, and cases cited.    Many of the cases referred to, it
is true, were instances of *compulsion*, where the plain-
tiff was forced to labor for the defendant.    However, I
can discover no distinction in principle, whether the
labor was secured through duress, compulsion or *fraud*.
The reason and justice in each case is the same; the law
is the same.

The authorities cited by defendant do not militate
against the position here announced.    The case of
*Callahan v. Riggins*, 43 Mo. App. 130, is one of the
series in the appellate courts of this state denying the
right of a near relative and member of the family to com-
pensation for labor done while a member of the family,
unless there was at the time an expectation of the one
to give, and the other to receive, pay for such services.
It is there held that the ordinary presumption of an
agreement to pay for valuable services rendered does
not obtain where the parties occupy a family relation.
These cases are taken out of the general rule, and have
no bearing on the question here.

In *Maltby v. Harwood*, 12 Barb. 473, and other cases
relied on by defendant's counsel, both parties were act-
ing under a mistake.    "They alike," says the court in
*Maltby v. Harwood*, "thought the plaintiff was bound
as an apprentice."    It was held there that no implied
obligation to pay arose.    It is said there, however, that
a different rule would hold if the plaintiff had been
*compelled* to perform the labor for defendants.    I take
it the court in the *Maltby case* would have held the
defendant liable on a showing that he had secured the
services of the plaintiff by falsely and knowingly rep-
resenting and inducing the plaintiff to believe that he,

the defendant, was legally entitled to his labor thus performed.

II. But it is suggested by defendant's counsel that the ignorance, on account of which plaintiff seeks relief, is that of law and not of fact, and hence, under the well-known maxim, *Ignorantia legis neminem excusat*, she cannot complain of the deception alleged to have been practiced by Joseph Hickam. Generally, it is true, a misrepresentation of the law affords no ground of redress; the misrepresentation should relate to a question of fact. However, this harsh and arbitrary rule is not without its exception. All men are not always presumed to know the law. Misrepresentation of the law is sometimes binding on the party who makes it. This is true in transactions between parties occupying fiduciary and confidential relations. "Indeed," it is said, "where one who has had superior means of information professes a knowledge of the law, and thereby obtains an unconscionable advantage of another who is ignorant, and has not been in a situation to become informed, the injured party is entitled to relief as well as if the misrepresentation had been concerning matter of fact. Bigelow on Fraud, 488, and cases cited; *Moreland v. Atchison*, 19 Tex. 311. The right to relief seems to be admitted, where "a party should intentionally deceive another by misrepresenting the law to him, or, knowing him to be ignorant of it, should thereby knowingly take advantage of his ignorance for the purpose of deceiving him." *Abbott v. Treat*, 78 Me. 126. Says Judge NAPTON, in *Faust, Adm'r, v. Birner*, 30 Mo. at p. 420: "There may have been gross ignorance and imbecility on one side and a perfect knowledge of the fact and the law on the other; there may have been imposition or undue influence; there may have been circumstances from which the jury might infer fraud," and, therefore, he concluded that the plaintiff in the action might, on a new trial, recover.

Justice STORY thus concludes a recital of exceptions to the above rule that there is no relief from an ignorance of the law. He says: "It is relaxed * * * in cases of imposition, misrepresentation, undue influence, misplaced confidence and surprise." 1 Story's Eq., sec. 137; also sec. 120, *et seq.* Conceding, now, for the purpose only of illustrating our contention, that the facts of this case are as put by plaintiff's counsel, that this negro girl was born and raised a slave, ignorant, unable to read, kept under strict surveillance by her master during and since the momentous year of 1865, and, up to his death in 1889, guarded by watchful eyes, kept within the precincts of the Hickam home and unadvised of the history of the times and the country, and taught to believe that she was still a slave and was the property of Hickam; that her old master kept her in darkness and absolute ignorance all these twenty-four years of the fact that she was free, what an outrage on justice would it be to answer her claim for compensation for valuable services to say to her: "You all the time knew the law of the land, and there is no relief for you." No; the plaintiff's case, as claimed by her, forms an exception to the rule, and, if Joseph Hickam was guilty of this fraudulent suppression of the truth and this misrepresentation to one under his care and control, he cannot be now heard to invoke the maxim of law above quoted.

III. We conclude, then, that the case in hand should have been submitted to the jury on the theory outlined in plaintiff's first instruction, and that the defendant's instructions (which were given and numbered 3, 4 and 5) incorrectly declared the law of this case, and should not have been given. We do not mean, however, to sanction the particular wording of plaintiff's first instruction. At another trial counsel should avoid calling attention to particular portions of the evidence, and thereby giving undue prominence to certain isolated testimony. Further, we must say that, in our opinion,

plaintiff's second and third instructions have no place in this case. As already held, in reference to defendant's instructions, the question of intention on plaintiff's part to charge for services rendered is not to be considered ; for, in this kind of case, there can in fact be no intention one way or the other. If plaintiff recover at all, it must be regardless of actual intention on the part of one or the other; it must be for the reason, and that alone, that she was fraudulently induced, by the conduct of Joseph Hickam, to render services for him under the belief that she, the plaintiff, owed him such labor as his slave. The case is thus narrowed to the one question, and it will only confuse the triers of the fact to inject other issues not pertinent.

IV. The trial court erred also in declaring to the jury that plaintiff could only recover, if at all, for the last five years' service. If she has any cause of action, it is for the whole term. Her claim is an entirety, good as to the whole, or bad as to the whole. The cause of action, if any there is, accrued on the discovery of the fraud in 1889. R. S. 1889, sec. 6775.

The judgment will be reversed, and the cause remanded for a new trial. All concur.